STATE OF NEBRASKA V. EDWARD ROSEWATER, AND THE
BEE PUBLISHING COMPANY, A CORPORATION.

FILED JULY 12, 1900. No. 11,399.

1. **Bee Publishing Company:** SAME FACTS. Contempt proceedings
were instituted against the Bee Publishing Company, as owner,
and Edward Rosewater, as editor-in-chief, of the *Omaha Daily
Bee*, on account of certain articles published in said paper. At
the request of the defendant Rosewater, separate trials were
accorded to each defendant. An opinion and judgment, finding
the defendant company guilty as charged, and imposing a fine
of $500, was rendered June 7. *Held*, That the essential facts in
each case are the same, and that the views expressed and the
conclusions reached in the trial of defendant company are con-
trolling of the present case.

2. **Evidence:** GUILT ESTABLISHED. Evidence examined, and found to
establish the defendant's guilt of the offense charged in the
information.

ORIGINAL proceeding in contempt. See pp. 283-292 for
evidence and argument. *Defendant convicted.*

*Constantine J. Smyth, Attorney General,* and *Willis D.
Oldham, Deputy,* for the state.

*Edward Rosewater,* for himself.

Defendant Rosewater answered, denying the charge
*in toto* and entering a several plea of not guilty.

HOLCOMB, J.

With the obvious design of influencing the judges and
controlling the decision of this court in a case then pend-
ing, a series of articles were from time to time published
in the *Omaha Daily Bee*, which led to the institution, by
the attorney general, by direction of the court, of proceed-
ings for contempt. The defendant company is the owner
and publisher of the paper, and the defendant, Edward
Rosewater, is the editor-in-chief, having the supervision

and management of said newspaper publication.  Issues were joined and a hearing had.  At the request of the defendant Rosewater, a separate trial was accorded him. An opinion, written by Mr. Justice SULLIVAN, in the case of the Bee Publishing Company, was rendered June 7, 1900.  60 Nebr., 282.  The defendant company was adjudged guilty of constructive contempt, and a fine of $500 imposed as a penalty therefor.  The law of the case and the facts, with minor exceptions, are equally applicable to each defendant.  The former opinion dealt exhaustively with the principles of law involved, and fully covers every salient feature of the case, thereby rendering it of no useful purpose to again review the case in detail, nor does the writer hereof feel at all able to add anything of value to the views therein expressed.  We only refer to that case for a fuller exposition of our views on the subject briefly discussed herein.

We are told that the liberty of the press is involved, and that this proceeding is an arbitrary exercise of power, curtailing that freedom which is necessary for the conservation of public interests, and a free discussion of all questions of public concern.  With the same speciousness and plausibility of reasoning, it might as well be argued that the liberty of the individual is endangered who corruptly tampers with a jury to secure an unrighteous verdict, or attempts to improperly influence the decision of a court in a case then pending before it.  The issue involved is not one of the liberty of an individual or of the press, but the right of every litigant to have his case heard free from baneful external influences sought to be exerted from selfish or other improper motives.  It is injecting into the case a harmful and disturbing element to the prejudice of the rights of the litigants, and inconsistent with the due and orderly administration of justice.

Again it is said, the right to criticise judges and courts for the manner in which official duties are discharged should be respected, and such criticism be not made the basis of proceedings of this character.  This view, like·

wise, is fallacious, to which recourse is had to cloud the mind rather than to obtain a clear perception of the nature and true character of the case at bar. It should be understood that no question of criticism of the court, or of any of its judges, enters into the case. A most critical examination of the record, and the articles upon which the proceedings are founded, will disclose nothing justifying the assumption that criticism of the court, or of the judges thereof, is any part of the foundation of the proceedings. No criticism was made and none attempted. The court had taken no action which might be made the basis of criticism. The time for action by the court in the case referred to had not then arrived, and the conclusions we afterwards reached were, we doubt not, satisfactory to those responsible for the publication of the articles under consideration. The publications in question do not refer to actions taken by the court, or by any of the judges, but were directed solely to actions to be taken and conclusions to be arrived at in the future, and it was undertaken, by this reprehensible method, to prejudice the mind of the public, and extort a particular decision in a case then pending for determination.

This was palpably an attempt to obstruct and interfere with the due administration of justice, and its tendency was to deprive one of the litigants of the constitutional right to a fair trial by a tribunal wholly free and untrammeled by attempts of coercion or intimidation or threats of public odium and derision.

On this branch of the case we reiterate what was said in the former opinion, viz., "Our decisions and all our official actions are public property, and the press and people have the undoubted right to comment on them and criticise and censure them as they see fit. Judicial officers, like other public servants, must answer for their official actions before the chancery of public opinion; they must make good their claims to popular esteem by excellence and virtue, by faithful and efficient service and by righteous conduct. But while we concede to the press

the right to criticise freely our decisions when made, we deny to any individual or to any class of men the right to subject us to any form of coercion with the view of affecting our judgment in a pending case."

The essential facts constituting the offense charged in the information are either admitted, or established by the evidence beyond controversy. The views expressed and the conclusions reached in the separate trial of the case against the corporation must, in the main, control in the present instance.

Mr. Rosewater states in his testimony that the first of. the articles published, entitled "Worthy of Serious Consideration," was written by him after reading the brief of the respondents in the case then pending. He testifies, and we have no reason to doubt the truth of his statement, that the other articles, appearing thereafter, were published without his knowledge, nor had he any personal connection therewith. The first article, standing alone, would not, perhaps, be so aggravated in its character as to require judicial notice. It was not so serious a breach of the proprieties which should obtain during the pendency of an important trial in a court of justice as some of those which followed. Yet it was this, the first article, which set the precedent, and was the initiatory step and beginning of a series of wrongful acts, which, following one after the other, disclosed a manifest purpose to warp the judgment, and control, by unlawful methods, judicial action, and which finally led to the unanimous opinion of the court that such reprehensible course of action should not, in justice to the inviolable rights of citizens, be permitted to pass unnoticed and unchallenged.

The first article is of the same purport, and is evidently intended to accomplish the same final object and purpose as those which followed it. That it, as well as the others, was contemptuous and calculated to obstruct the due administration of justice, and impair the rights of litigants, has already been, and we doubt not, correctly determined.

We do not desire to impute to the defendant actions wrongful in their character not fully justified by the evidence, and any circumstance lessening the degree of the offense, or in mitigation of its character, is given full consideration. The offense is established, and that the defendant should be held accountable therefor, we entertain no reasonable doubt.

In view of the evidence as to defendant's participation in the wrongful acts made the basis of this proceeding, and the conclusions reached in the trial first had, and the fine imposed upon the corporation defendant in that case, we are not disposed to inflict further punishment in this, or do more than to make it manifest that the rights of litigants will be firmly and vigorously protected, while their cases are before us for decision in this tribunal. This each litigant has the undoubted right to ask, and even demand, and to accomplish which it is our duty to invoke, on all proper occasions, the power conferred by law upon this court.

The defendant Rosewater is found guilty as charged in the information. We are content to impose no fine upon him for this, the first offense. He is adjudged to pay the costs of the prosecution.

JUDGMENT ACCORDINGLY.

NORVAL, C. J., took no part in the opinion.