### KILGALLEN v. STATE OF INDIANA.

[No. 23,820. Filed November 18, 1921. Rehearing denied December 6, 1922.]

1. CONTEMPT.— *Indirect Contempt.— Newspaper Article.— Impeding Administration of Justice.*—In order that a newspaper article may constitute contempt, the language employed therein need not have brought the court into disfavor and engendered the want of proper respect for the court or have actually impeded the progress of the court or the administration of justice therein, if it was of a character calculated to produce such an effect. p. 540.

2. CONTEMPT.—*Indirect Contempt.—Information.—Sufficiency.*— In a prosecution for indirect contempt, an information is sufficient which alleged that defendant charged in a newspaper article that "the grand jury of Marion county and each member thereof had been influenced in their deliberations and actions by the use of money and other corrupt influence," in the investigation of a named case in the Marion Criminal Court, that the article was published with reference to that case and the conduct of the grand jury and the judge of such court at the time the indictment was returned, and that the charges made in such article were false and were made with intent to impede and corrupt the administration of justice. p. 540.

3. CONTEMPT.— *Indirect Contempt.— Publication of Article in Newspaper.—Liability of Publisher.*—The publisher of a newspaper cannot exonerate himself from liability to punishment for contempt in case an article reflecting on the courts is published in his paper by denying that he had any knowledge of the article prior to its publication. p. 542.

4. CONTEMPT.—*Indirect Contempt.—Publication of Article in Newspaper.—Liability of Proprietor.*—It is the duty of the proprietor of a public paper that may be used for the publication of improper communications to use reasonable caution in the conduct of his business that no libels be published, and

he is civilly responsible for the wrong, and criminally liable, unless an unlawful publication was made under such circumstances as to negative any presumption of privity or connivance or want of ordinary precaution on his part to prevent it, it not being enough to show that he had never seen the alleged libel and did not know of its publication. p. 542.

5. CONTEMPT.— *Indirect Contempt.— Purging by Verified Answer.—Application of Common-Law Doctrine.*—The common-law doctrine that a person charged with criminal indirect or constructive contempt may purge himself of the charge by an answer under oath has only a limited application, and does not apply where the charge is based upon alleged acts or statements of the respondent which are clearly contemptuous in character. p. 543.

6. CONTEMPT.—*Indirect Contempt.—Answer and Verification.—Sufficiency.—Statutes.*—In a prosecution for indirect contempt under §§1047, 1048 Burns 1914, §§1012, 1013 R. S. 1881, defendant's answer, consisting of three paragraphs, the first a general denial, the second a disclaimer of responsibility on the theory that, though defendant was managing editor, he did not prepare the alleged contemptuous article, or procure the publication thereof, and the third disclaiming any unlawful intent and concluding with an affidavit that "the statements of fact set forth in the foregoing answer are true and correct," is insufficient as a verified answer; and, as the first paragraph is contradicted by affirmative statements of facts in the second and third paragraphs, the affidavit cannot be considered as a verification of each paragraph of the answer. p. 544.

7. CONTEMPT.—*Answer.—Requisites.*—In a proceeding for indirect contempt, in order to purge himself of contempt, the defendant must file an answer which fully denies the charge on which the rule for an attachment was granted. p. 544.

8. APPEAL.—*Rehearing.—Questions Reviewable.—New Points.*— A petition for rehearing should ask a rehearing only on points that were properly presented for decision at the first hearing, and were overlooked or improperly denied, and new points will not be considered in determining whether a rehearing ought to be granted. p. 546.

From Marion Criminal Court (50,820) ; *James A. Collins,* Judge.

Prosecution by the State of Indiana against James Kilgallen. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Henry N. Spaan, Walter Meyers* and *Whitcomb & Dowden,* for appellant.

*Ele Stansbury* and *U. S. Lesh,* Attorneys-General, *Frank S. Roby, D. F. Stansbury* and *Remster A. Bingham,* for the state.

WILLOUGHBY, J.—This is an appeal from a judgment of the Marion Criminal Court by which appellant was convicted of an indirect contempt of the criminal court of Marion county, Indiana, and the grand jury of said court.

The facts alleged to constitute such contempt were brought to the knowledge of the court by an information duly verified and filed by the prosecuting attorney as follows:

"Claris Adams, Prosecuting Attorney in and for the 19th Judicial Circuit, of the State of Indiana, being duly sworn upon his oath, would represent and give the court to understand and be informed that on the 12th day of January, 1920, in the City of Indianapolis, County of Marion, and State of Indiana, the Grand Jury for the Criminal Court of Marion County of said State for the January Term of 1920, composed of the following persons, to-wit: Edward J. Gust, Wm. D. Hartman, Richard Hurforth, John Faukner, Anton King, Albert Hendricks—was duly and legally impaneled, sworn and charged by the Honorable James A. Collins, who was the duly and legally elected, acting and qualified judge of said court.

"That during the month of January in said term said Grand Jury investigated, heard testimony and deliberated upon the case of one Harry Parsons and Benjamin Parsons, who were then and there charged with the crime of receiving stolen goods at and in the county of Marion and State of Indiana, about the 30th day of October, 1919, and against whom an affidavit had been

previously filed in the city court of the city of Indianapolis, charging them with such crime.

"That said grand jury, after hearing the testimony of witnesses touching said charge of receiving stolen goods against the said Harry Parsons and Benjamin Parsons as aforesaid, and after deliberating thereon, indicted the said Harry Parsons and duly returned an indictment into criminal court of Marion county on the 4th day of February, 1920, charging the said Harry Parsons with the crime of receiving stolen goods as aforesaid, which indictment was legally voted by the members of said grand jury and duly endorsed a true bill by Edward J. Gust, who was then and there foreman of said grand jury. That said indictment is now pending in the Marion Criminal Court, and has been since the said 4th day of February, 1920, and remains undisposed of upon the records of said court. That the said grand jury, after hearing the testimony of witnesses in said case of Benjamin Parsons, failed to return an indictment against him for the reason that there was not sufficient evidence produced against him to justify his indictment.

"That at the time said cases of said Harry Parsons and Benjamin Parsons were considered, investigated and acted upon by the said grand jury, the said Harry Parsons and Benjamin Parsons had employed as their attorney to represent them in said criminal charge one Charles W. Rollinson, a practicing attorney in the city of Indianapolis, and at his solicitation the said Harry Parsons and Benjamin Parsons were permitted by the said grand jury to appear as witnesses in their own behalf during the investigation of their said cases. That the said grand jury and each member thereof in their investigation, consideration and action upon the said cases of Harry Parsons and Benjamin Parsons were actuated solely by a sense of public duty. That no in-

fluence was exerted, no suggestion made and no form of corruption or coercion was either employed or attempted by any person whatsoever, to influence said grand jury or any member thereof in the slightest degree, in the consideration, deliberation or action of said grand jury or any individual member thereof in said case. That the action of the said grand jury and each member thereof was taken in each of said cases solely in accordance with the judgment of said grand jury and each member thereof upon the evidence as produced before said body in such investigation.

"That on the 14th day of April, 1920, and for many months prior thereto, the defendant, James L. Kilgallen, was the managing editor of the Indiana Daily Times, a newspaper of general circulation published in the city of Indianapolis, county of Marion, State of Indiana. That this newspaper and each copy thereof circulated freely among and was read by some of the citizens of the city of Indianapolis, Marion county, Indiana. That this said defendant, James L. Kilgallen, as managing editor of the said Indiana Daily Times, on the 14th day of April, 1920, did wilfully, knowingly and corruptly publish, circulate, disseminate and cause and procure to be printed, published, circulated, and disseminated the following false, corrupt and libelous article and statement in the said newspaper, named and styled the Indiana Daily Times, with the unlawful and corrupt purpose and intent of bringing the said grand jury and each member thereof, the court, the judge and all officers thereof, into disrepute and contempt, and with the corrupt and wicked purpose and intent of embarrassing the administration of justice in the case of the State of Indiana vs. the said Harry Parsons, which was then and there pending in the Marion Criminal Court, and with the corrupt and wicked purpose and intent of prejudicing the public as to the merits of said case,

which was then and there pending in the Marion Criminal Court. Which said false, corrupt and libelous article is in words and figures following, to-wit:.

"To the Indianapolis Bar Association:

"'Charles W. Rollinson, a practicing attorney of Indianapolis, has publicly declared that with the knowledge and consent of Claris Adams, prosecuting attorney of Marion county, he appeared with witnesses before the Marion county Criminal Court Grand Jury and there "conducted a defense" of two clients charged with receiving stolen property.

"'He further declared that following his "defense" of these two clients as conducted before the grand jury, one client was freed and a faulty indictment returned against the other.

"'You gentlemen, as reputable attorneys of this county bar, having a high regard for the ethics and standards of your profession, cannot afford to allow conditions to obtain in this county which make it possible for men accused of felonies to place their representatives in the grand jury room with the intention of defeating the very purposes for which the grand jury is maintained.

"'You can not afford to have the courts wherein you practice debauched and stultified in this manner.

"'You can not afford to have the suspicion retained that it is possible, in this county, by the use of money, to influence the deliberations of a grand jury charged with the investigation of crime.

"'You owe it to yourselves, to the community, to the courts, to the good name of Marion county to demand of James A. Collins, judge of the criminal court, a complete and open investigation of this trifling with the means of justice in this county.

"'Are you jealous or ashamed of your profession?'

"That said article and statement was intended by him to refer and was understood by those who read said

article to refer to the said cases of the State of Indiana v. Harry Parsons, and the case of the State of Indiana v. Benjamin Parsons, as heretofore described. That by the following language contained in said article to wit: 'You can not afford to have the courts wherein you practice debauched and stultified in this manner. You can not afford to have the suspicion retained that it is possible, in this county by the use of money, to influence the deliberations of a grand jury charged with the investigation of crime'—and by the other language used and statements made in said article and statement, said defendant meant, intended to convey the impression to the public and intended the readers of such article and statement to understand and believe, that the Marion Criminal Court, the judge, and said grand jury and each member thereof, had been debauched and corrupted by the use of money and other corrupt and wicked means in connection with the investigation and indictment of Harry Parsons in the case of the State of Indiana v. Harry Parsons, which was then pending in the Marion Criminal Court and the investigation and discharge of Benjamin Parsons in his case. That by such language and other statements contained in said article published by this defendant as aforesaid, he meant, intended to convey the impression to the public and intended the readers of said article to understand and believe that in their investigation of the case of the State of Indiana v. Harry Parsons and the State of Indiana v. Benjamin Parsons, in their indictment of the former and in their discharge of the latter, that the grand jury of Marion county and each member thereof had been influenced in their deliberations and actions by the use of money and other corrupt influence. That these statements and the innuendoes they were intended to imply and did imply as heretofore set out were then and there wholly false and untrue. That this language and the

other statements contained in said article published as aforesaid by this defendant in the Indiana Daily Times on the 14th day of April, 1920, were wickedly and corruptly published and caused to be published, circulated and disseminated by this defendant with the unlawful, wicked and corrupt intent of bringing the Marion Criminal Court, the judge thereof and the grand jury of said court for the January term, 1920, and each member thereof, into contempt and disgrace and with the corrupt and wicked intent to embarrass, impede and corrupt the administration of justice in the case of the State of Indiana v. Harry Parsons, which was then and there pending in the Marion Criminal Court, and with the wicked and corrupt intent of prejudicing the public concerning the merits of the said case of the State of Indiana v. Harry Parsons.

"WHEREFORE, informant prays the court that the said James L. Kilgallen be ruled to appear in this court and show cause, if any he have, why he should not be attached and punished as for contempt of said court and said grand jury."

Upon the filing of this information an order was entered by the court ordering the appellant to appear in said court and show cause, if any he may have, why he should not be punished for contempt, and a copy of such order was served on appellant. This order contained a copy of the information filed by the prosecuting attorney.

At the time fixed in such order the appellant appeared in the Marion County Criminal Court and filed his motion to discharge the rule of said court, alleging in such motion that the facts stated in the information are not sufficient to constitute a contempt. This motion was overruled by the court. Appellant then filed his verified answer in three paragraphs. The first being a general denial and the second and third set up affirmative matter.

Kilgallen *v.* State—192 Ind. 531.

The court held the answer insufficient and ordered an attachment for the body of defendant and he was brought into court for finding, sentence and judgment. The court found him guilty and rendered judgment on such finding.

Exceptions were taken to the finding and judgment and appellant moved for a new trial, which motion was overruled and exception taken. From the judgment of the court appellant appeals

The questions arising upon the record in this case are: First. Are the facts stated in the information sufficient to constitute a contempt of court? Second. If such facts are sufficient, are the facts stated in the answer sufficient to purge the defendant of contempt, that is, are the facts stated under oath sufficient to show that no contempt was committed? Was the information in this case sufficient?

In 9 Cyc, beginning on page 20, it is said: "Publications concerning a pending cause, trial, or judicial investigation, calculated to prejudice or prevent fair and impartial action, which seek to influence judicial action by threats or other form of intimidation, which reflect upon the court, counsel, parties, or witnesses, respecting the cause, or which tend to corrupt or embarrass the due administration of justice, constitute contempt. The criminal intent of such publications is immaterial. So they need not be published in the place where the court is held; circulation in and about such place is sufficient. So it is not necessary to show that they were read by the jurors or those whose conduct was sought to be influenced by them. Truthful publications relating to judicial proceedings do not, however, constitute contempt. Any publication reflecting on the grand jury, tending to bring the members thereof into disrepute and to embarrass or interrupt them in the discharge of their duties is contempt."

13 C. J. 34, §44 states: "Liberty of the press as guaranteed by the constitution does not permit publications respecting pending causes which are reasonably calculated to interfere with the due administration of justice. Hence the rule is now firmly settled that it is contempt to issue publications which are calculated to prejudice or prevent fair and impartial action in a cause of judicial investigation then pending, including those which seek to influence judicial action by threats or other form of intimidation, which reflect on the court, counsel, parties, or witnesses, respecting the cause, or which tend to corrupt or to embarrass the due administration of justice." See, *State* v. *Morrill* (1855), 16 Ark. 384; *State* v. *Rosewater* (1900), 60 Nebr. 438, 83 N. W. 353.

The language employed need not have brought the court into disfavor and engendered the want of proper respect for the court or have actually impeded the progress of the court or the administration of justice therein, if it was of a character calculated to produce such an effect. *Ray* v. *State* (1917), 186 Ind. 396, 114 N. E. 866.

1.

It is claimed by appellant that even if the alleged contemptuous article referred to a pending case, yet the information is insufficient, and for the reason that it wholly fails to set forth facts from which it appears that said article will tend to prejudice the public as to the merits of said pending case, or that said article will corrupt or embarrass the administration of justice with reference to such case, or that said article will tend to embarrass any proceedings thereafter to ensue in said pending case.

2.

The information alleges that the appellant in the alleged contemptuous article charged that "the grand jury of Marion county and each member thereof had been influenced in their deliberations and actions by the use

Kilgallen *v.* State—192 Ind. 531.

of money and other corrupt influence" in the investigation of the case of the State v. Harry Parsons pending in the Marion Criminal Court.

The information shows that the case was then pending; that the article was published with reference to that case and the conduct of the grand jury and the judge of the Marion Criminal Court at the time the indictment was returned; that said charges were false and were made with intent to impede and corrupt the administration of justice in such case. The court did not err in overruling appellant's motion to discharge the rule.

The remaining question in the case is: "Did the appellant purge himself by verified answer in the proceedings?" Section 1047 Burns 1914, §1012 R. S. 1881, provides as follows: "In all cases of indirect contempt, the person charged therewith shall be entitled, before answering thereto or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him, and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt. No such rule, as hereinbefore provided for, shall ever issue until the facts alleged therein to constitute such contempt shall have been brought to the knowledge of the court by an information duly verified by the oath or affirmation of some officers of the court or other responsible person."

Section 1048 Burns 1914, §1013 R. S. 1881, provides as follows: "If the defendant shall answer to the facts set forth in such rule, by showing that, even if they are all true, they do not constitute a contempt of the court, or by denying or explaining or confessing and avoiding them, so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant. But if the defendant shall not, in his answer to such rule, sufficiently deny, explain or avoid the facts therein set forth, so as to show that no contempt has been committed, the court may proceed * * *."

The publisher of a newspaper cannot exonerate himself from liability to punishment for contempt in case an article reflecting on the courts is published in 3. his paper by denying that he had any knowledge of the article prior to its publication. *People* v. *Wilson* (1872), 64 Ill. 195, 16 Am. Rep. 528; *People* v. *Gilbert* (1917), 281 Ill. 619.

It is the duty of the proprietor of a public paper that may be used for the publication of improper communications, to use reasonable caution in the conduct of 4. his business that no libels be published. He is civilly responsible for the wrong, to the extent indicated and he is criminally liable, unless the unlawful publication was made under such circumstances as to negative any presumption of privity or connivance or want of ordinary precaution on his part to prevent it. It is not enough to show that he had never seen the alleged libel and did not know of its publication. *Commonwealth* v. *Morgan* (1871), 107 Mass. 199.

In *State of Oregon* v. *Mason* (1894), 26 Ore. 273, 38 Pac. 130, 26 L. R. A. 779, 46 Am. St. 629, the court said: "One who furnishes the means for carrying on, and derives profit from, the publication of a newspaper, and intrusts its management to servants or employes, whom

he selects and controls may be said to cause to be published what actually appears, and should be held responsible therefor, whether he was individually concerned in the publication or not, if he did not exercise proper care and oversight over the business intrusted to his servants. Criminal responsibility for the acts of an agent or servant in the course of his employment necessarily implies some degree of moral guilt or delinquency on the part of the principal; but this may be shown either by direct participation in or assent to the act, or by a want of proper care or oversight or other negligence in reference to the business intrusted to the servant. We think, therefore, the mere fact that the libelous article was published in the newspaper without the knowledge or consent of its proprietor or manager is no defense to a criminal prosecution against such proprietor or manager."

The common-law doctrine that a person charged with criminal indirect or constructive contempt may purge himself of the charge by an answer under oath 5. has only a limited application at the present time, for it does not apply where the charge of contempt is based upon alleged acts or statements of the respondent which are clearly contemptuous in character.

In *Ray* v. *State, supra,* it is held that, where the charge of contempt is based upon the use of language with reference to the court, if the language is clear, explicit, and susceptible of but one meaning, and this is a direct charge against the court the denial by the defendant of any intent to commit a contempt does not entitle him to a discharge. See *Ex parte Nelson* (1913), 251 Mo. 63, 157 S. W. 794, and *People* v. *Wilson, supra.*

See *People* v. *Grogan* (1913), 190 Ill. App. 626, stating the rule that in a prosecution for criminal contempt the answer of the respondent can not be controverted

and must be taken as true, but holding that this rule does not apply where the answer of respondent states facts which are inconsistent with the avowed purpose and intention as stated in his answer.

The defendant filed an answer containing three paragraphs, the first paragraph being: "The defendant for first paragraph of answer denies each and every material allegation contained and set forth in said information, citation and rule to show cause." The second paragraph of answer disclaims responsibility for the alleged contemptuous article, upon the theory that though appellant was managing editor, he did not prepare or cause to be prepared or procure the publication of said contemptuous article, and asserts that said article was prepared by some one else. Paragraph three is a disclaimer of unlawful intent and at the end of this answer is the following affidavit:

"State of Indiana ⎫
Marion County ⎰ SS

"James L. Kilgallen, being first duly sworn on his oath, says that the statements of fact set forth in the foregoing answer are true and correct.

James L. Kilgallen.

"Subscribed and sworn to before me, the undersigned notary public in and for said county and state, this 28th day of April, 1920.

"Kathryn Wood,
Notary Public."

The attorney-general claims that the answer in this case is not verified within the meaning of the law; he also claims that the affirmative paragraphs of answer contradict the first paragraph and that therefore the answer cannot be considered in the light of absolving the appellant from responsibility and says that the reasons for the rule requiring the court to assume facts stated in a verified answer to be taken as true is based

upon the assumption that the affiant could be prosecuted for perjury if the facts stated are untrue, that in fact, the affidavit attached to the answer is not in compliance with the law.

The appellant contends that the verification of the answer is sufficient and says a general verification of an answer containing more than one paragraph constitutes a verification of each separate paragraph of such answer and to sustain said proposition appellant refers us to *Louisville, etc., R. Co.* v. *Payne* (1885), 103 Ind. 183, 2 N. E. 582; *Harris* v. *Castleberry* (1901), 3 Indian Territory 576, 64 S. W. 541.

The authorities cited by appellant do not sustain his contention. *Louisville, etc., R. Co.* v. *Payne, supra,* was a suit in replevin, and the court in that case held that the plaintiff's complaint, if it contains the statutory requisites of an affidavit to obtain an order for the delivery of the property and if it be verified, may subserve the twofold purpose of complaint and affidavit.

*Harris* v. *Castleberry, supra,* was a case in the court of appeals of the Indian Territory and was brought before a United States commissioner under a federal statute in force in such territory at said time. It was a suit for replevin in which the plaintiff joined three separate causes of action in the same complaint, but in separate paragraphs. These paragraphs of complaint were not contradictory, but under the statute were for three separate, different causes of action. It was held in that case that an affidavit to the complaint was a sufficient verification of each cause of action named in such complaint.

It will be observed that these cases are in no way similar to the one at bar, and do not in any manner sustain appellant's assertion.

The answer must be considered in its entirety, and

when so considered the first paragraph is contradicted by affirmative statements of facts in the second and third paragraphs.

The affidavit is at the end of the paper denominated an answer, and states that "the statements of fact set forth in the foregoing answer are true and correct." This affidavit cannot be considered as a verification of each paragraph of the answer.

In order to purge himself of contempt, the defendant must file an answer which fully denies the charge on which the rule for an attachment was granted. *Burke* v. *State* (1874), 47 Ind. 528. This the appellant has not done. The answer filed was not sufficient to purge him of the contempt charged.

We find no error in the record. Judgment affirmed.

Townsend, C. J., not being present at oral argument, did not participate.

### ON PETITION FOR REHEARING.

PER CURIAM.—In this petition for a rehearing, the appellant seeks to raise a constitutional question which was not raised by him in his original brief. Unless a point was presented for decision at the original hearing, it will not be considered in determining whether a rehearing ought to be granted. The petition should ask a rehearing only on points that were properly presented for decision at the first hearing, and were overlooked or improperly decided.

We find no points properly presented for decision at the first hearing which were overlooked or improperly decided. A re-examination of the case convinces us that the conclusion reached in the original opinion is correct.

The petition for a rehearing is overruled.