STATE EX REL. INDIANAPOLIS BAR ASSOCIATION *v.*
FLETCHER TRUST COMPANY.

[No. 26,639.  Filed January 13, 1937.]

*Taylor E. Groninger, Alan W. Boyd, Herman W. Kothe, Henry M. Dowling, Maurice L. Mendenhall, Milton N. Simon* and *Howard P. Travis,* for the appellant.

*Dailey, O'Neal, Dailey & Efroymson,* for appellee.

HUGHES, J.—The relator, by its committee on the unauthorized practice of the law, charges that the respondent, Fletcher Trust Company, is a corporation with its principal place of business in the City of Indianapolis, and organized under the laws of the State of Indiana relating to trust companies for the purpose of engaging in general trust company business; that being so organized, said trust company is subject to the laws of said State and has no power, authority, or rights except such as are conferred upon it by said laws of Indiana; that said trust company has no power, authority, or right whatsoever to engage in the practice of the law or to conduct a law business.

It is charged that Donald S. Morris, J. F. Beals, and Richard F. Mills are attorneys duly admitted to the Bar of Indiana, and members of this Court; that the respondent trust company has for many years, by the use of the names and by and through said Morris, Beals, and Mills, its employees, engaged in the practice of law in the County of Marion, State of Indiana, and has for a long time continually and willfully violated the laws of the State regulating the practice of the law and has unlawfully assumed and usurped franchises and privileges not granted to it by the common or statutory laws of the State of Indiana, to-wit: to practice law and to do a law business. It is charged that the trust company is engaged in the City of Indianapolis and elsewhere in Indiana in the business of advertising for and soliciting through salaried employees the business of drafting and writing wills for its patrons and customers, and in actually drafting and writing such wills, for a valuable consideration, in which wills it is named as trustee or executor, or both; and also in the business of giving legal advice and counsel to its patrons and customers for a valuable consideration about the execution of wills, the legal effect of different clauses, the powers and duties of trustees. It is further charged that the respondent prepares and drafts for a valuable consideration, "living trust agreements" and gives advice relative to all legal phases thereof; that it performs and has performed legal services by its employees, incident to the probating of wills, administering and settling of estates, petitioning for appointment of trustees and guardianships and trusts, filing of petitions for investments and petitions to sell property in estates and guardianships. It is charged that through its salaried attorneys that it institutes suits to foreclose mortgages; that it prepares and drafts contracts, leases, deeds, mortgages, and trust agreements for a

valuable consideration. The relator asks for an order of this court requiring respondent to show cause, if any it has, why it should not be punished for contempt of this court for the offenses set out and that it be enjoined and restrained from engaging in the practice of law in the State of Indiana.

The respondent, Fletcher Trust Company, waived the issuance and service upon it of a rule to show cause and filed a verified response denying each of the charges contained in the information; and also denied under oath that there was any intention on its part to commit any act in violation of any rule or order of this court, and that there was any intention on its part to engage in any act forbidden by law. It also admits in its verified response that it has no authority to practice law and denies that it intends to do so.

We think it clearly appears that the information attempts to charge a criminal contempt as recently discussed in the cases of *Denny* v. *State* (1932), 203 Ind. 682, 182 N. E. 313, and *Brown* v. *Brown* (1933), 205 Ind. 664, 187 N. E. 836.

Since the information charges a criminal contempt, the respondent contends that its response under oath denying each of the facts charged in the information as constituting a contempt and that there was no intention on its part to commit any act in violation of any rule or order of this court is sufficient to entitle the respondent to be discharged.

The relators contend that the statute of this State allowing "purging" by affidavit of the contemnor has no application to contempts against the authority of the Supreme Court and hence respondent's return is not able to exonerate it. The relators further contend that the inherent power of the Supreme Court to punish respondent for contempt and to enjoin it from further practice of law can not be limited or hampered by any

act of the legislature and that the contempt statutes of Indiana have no necessary application to the present case.

The statute relative to contempts of courts was enacted in 1879. Acts of 1879, Special Session, ch. 35, p. 112, as amended. Burns 1933, Sections 3-901 to 3-910, §§874-877, Baldwin's 1934. Section 10 as amended, provided that the provisions of the act shall apply to all proceedings for contempt in all courts of record in this state except the Supreme Court. So it is clearly seen, as contended for by relator, that the statute does not apply in the instant case and has no necessary application thereto. We also agree with relator that the Supreme Court has the inherent power to punish for a contempt of this court. As said in the case of *Little* v. *State* (1883), 90 Ind. 338, 339:

"There is no doubt that the power to punish for contempt is an inherent one, for independent of legislation, it exists, and has always existed, in the courts of England and America. It is, in truth, impossible to conceive a superior court as existing without such power. The legislature may regulate the exercise of this power—may prescribe rules of practice and procedure, but it can neither take it away nor materially impair it."

Speaking of contempt cases, Blackstone says:

"The process of attachment, for these and like contempts, must necessarily be as ancient as the laws themselves. For laws, without a competent authority to secure their administration from disobedience and contempt would be vain and nugatory. A power, therefore, in the supreme courts of justice to suppress such contempts, by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal. Accordingly we find it actually exercised as early as the annals of our law extend." 2 Jones' Blackstone, 2503.

*Holman* v. *State* (1886), 105 Ind. 513, 5 N. E. 556;

*Cheadle* v. *State* (1887), 110 Ind. 301, 11 N. E. 426; *Hawkins* v. *State* (1890), 125 Ind. 570, 25 N. E. 818; *State* v. *Shumaker* (1928), 200 Ind. 623, 157 N. E. 769, 162 N. E. 441.

Conceding that the Act of 1879, *supra,* does not apply in the instant case still we are of the opinion that where one has been charged with constructive or indirect criminal contempt, denies under oath the facts charged in the information and that he had no intent to show any disrespect to the court or to defy its authority he is entitled to a discharge. This has been the law since and before the time of Blackstone. He said:

> "If the party can clear himself upon oath, he is discharged; but, if perjured, may be prosecuted for perjury." 2 Jones' Blackstone 2506.

In the case of *The King* v. *Sims,* 12 Mod. 511, it is said:

> "If one brought in, in contempt, deny all upon oath, he is of course discharged of the contempt; but if he has forsworn himself, he may be prosecuted for perjury."

And in the case of *The King* v. *Vaughan* (1780), 2 Doug. 516, the court said:

> "Lord Mansfield stated the practice of the court to be, that, if the defendant by his *affidavit,* fully denies the charge on which the rule of attachment was granted, *that* is sufficient; the weight of the evidence, or the credibility of what is sworn, is never considered; but if the defendant is hardy enough to swear falsely, he is left to be punished by indictment."

The case of *State* v. *Earl* (1872), 41 Ind. 464, is one of the early cases in this State upon the subject of contempt. An order was made by the Supreme Court requiring the defendant to appear and show cause why he should not be attached for alleged contempt of this court. The Attorney-General was directed to take

charge of the case on behalf of the state. The defendant filed an affidavit fully denying all the allegations contained in the rule. The defendant moved the court to discharge the rule because he had fully purged himself of the alleged contempt. The court said (p. 465):

"We have examined the authorities, and are satisfied that in all cases of proceedings for alleged constructive contempts, except, perhaps, when they are to enforce a civil remedy, if the party charged fully answers all the charges against him he shall be discharged, as to the attachment, and that the court can not, after that, hear evidence to impeach or contradict him."

In the case of *Stewart* v. *State* (1895), 140 Ind. 7, 39 N. E. 508, it is stated (p. 14):

"It always has been the law in this State, even prior to the enactment of the statute referred to in constructive or indirect contempts, if the defendant, by his sworn or verified answer, fully deny the charge on which the rule for an attachment was granted, that is sufficient. The weight of the evidence, or the credibility of what is sworn, is never considered; but if the defendant is hardy enough to swear falsely, he is left to be punished by indictment. In chancery it is said they proceed differently; they examine the defendant on interrogatories, and also examine witnesses on both sides, and then decide on the truth of the charge. But in a case of this kind it has always been the law in this State on the filing of defendant's answer denying the whole charge against him in the affidavit, the court must discharge the rule, and can not proceed to hear evidence in support of the original affidavit and in contradiction of the answer of the defendant."

The foregoing statement of the law is supported by many other cases in this State. See *Hasket* v. *State* (1875), 51 Ind. 176; *Burke* v. *State* (1874), 47 Ind. 528; *Fishback* v. *State* (1892), 131 Ind. 304, 30 N. E. 1088; *Zuver* v. *State* (1919), 188 Ind. 60, 121 N. E. 828; *Denny et al.* v. *State ex inf. Brady* (1932), 203 Ind. 682,

182 N. E. 313. And whether the contempt proceeding is pursuant to the statute or not, the rule is the same.

In the case of *Denny* v. *State, supra,* it is said:

"In criminal contempt proceedings the defendant is entitled to a discharge upon his verified answer if the answer, considered with the information, is sufficient to show lack of intent to defy the authority of the court."

In the return of the respondent herein among other things it says:

". . . that in all of the acts performed by the respondent it acted in conscientious belief that such acts were lawful and proper and there never was any intention on its part to engage in any act forbidden by law or to commit any act in violation of any rule or order of this court."

All of the Indiana cases hold that intent is an essential element of criminal contempt and that where the answer, considered with the information, shows there was no intent to defy the authority of the court the defendant is entitled to be discharged.

The respondent not only filed a verified response denying the charges contained in the information and that there was no intention to defy the authority of this court, but it also set out in its response the acts which it actually performed in its course of business. Whether any of the acts done by the respondent can be said to be "practicing law" is debatable and the courts of this country are at variance upon the subject. It can at least be said there is room for two constructions, so that the intent of the party becomes the material question of inquiry, and a denial on oath by such party of intent to violate any rule or order of the court is conclusive. The great weight of authority holds that in cases of constructive or indirect criminal contempt, if the contempt consists of acts or statements

which are capable of two constructions, one of which would amount to contempt and the other not, then the intent becomes the material question and if the contemnor denies under oath that he did intend to violate an order or rule of court he is entitled to be discharged.

While, as we have heretofore said, the contempt statute of 1879 has no necessary application here for the reason in Section 10 thereof, §3-910 Burns 1933, §887 Baldwin's 1934, it excepts this court from its provisions, yet it provides in section 3-909 Burns 1933, §886 Baldwin's 1934, that:

> ". . . but if the defendant shall answer to the facts set forth in such rule, by showing that, even if they are all true they do not constitute a contempt of the court, *or by denying or explaining or confessing and avoiding them so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant.*" (Our italics.)

The foregoing is merely declaratory of the common law and has been accepted as a true statement of the law in numerous cases. In the instant case the respondent filed its verified response denying the charges and also in its answer set out and explained and confessed what it had done so as to show no contempt was intended against this court. And when the facts, as set out in the information in the instant case, are not clearly contemptuous and susceptible of but one meaning, such an answer as filed herein by the respondent must be accepted as conclusive. *Ray* v. *State* (1917), 186 Ind. 396, 114 N. E. 866; *Hiner* v. *State* (1932), 204 Ind. 7, 182 N. E. 245. It has been stated by this court that:

> "The common-law doctrine that a person charged with criminal indirect or constructive contempt may purge himself of the charge by an answer under oath has only a limited application at the present time, for it does not apply where the charge of contempt is based upon alleged acts or statements

of the respondent which are clearly contemptuous in character." *Kilgallen* v. *State* (1922), 192 Ind. 531, 543, 132 N. E. 682, 137 N. E. 187.

The above case grew out of facts where an information had been filed against the appellant, who was the managing editor of a newspaper and who had published certain alleged false statements against the grand jury, court, and judge. It was there held that (p. 543):

"... where the charge of contempt is based upon the use of language with reference to the court, if the language is clear, explicit, and susceptible of but one meaning, and this is a direct charge against the court the denial by the defendant of any intent to commit a contempt does not entitle him to a discharge."

This seems to be the general rule as applied to publications in newspapers where contempt of the court is charged. As said in the case of *Fishback* v. *State* (p. 314), *supra*:

"If the article is *per se* libellous, making a direct charge against the court or jury, admitting of but one fair and reasonable construction, and requiring no innuendo to apply its meaning to the court, then it would be trifling with justice to say that in such a case the publisher could admit the publication, but deny that he intended the plain and unmistakable meaning which the language used conveys. ..."

However, it is further said in the above case:

"... but when the language used in an article is not *per se* libellous, and only becomes so, and made to apply to the court by the use of innuendos, and is fairly susceptible of an innocent meaning in so far as any reflection upon the court is concerned, and the defendant answers under oath that he used it in a sense not libellous, and declares he intended no imputation upon the court either impugning the motives or integrity of the judge, or to embarrass the administration of justice, his answer must be taken as conclusive. If he swears falsely he is liable to indictment and prosecution for perjury."

It seems to be the general rule that if the publication is unambiguous and clearly constitutes a contempt, the intent is conclusively presumed, but when the publication is ambiguous and uncertain the rule is that a sworn answer by the contemnor denying any intention to be disrespectful to the court or to bring it in disrepute, is conclusive in his favor. *Ex parte Nelson* (1913), 251 Mo. 63, 157 S. W. 794; *Fishback* v. *State, supra.* It is likewise true that if one is charged with contempt and the acts charged as the basis of the contempt are open to more than one construction and are not clearly contemptuous then a verified answer by the contemnor denying that he had any intention to disregard the authority of the court, or any purpose to destroy or impair its authority, is conclusive and the person charged must be acquitted. And as said in Rapalje on Contempts, Section 115: "Again, inasmuch as the essence of a contempt consists, to a great extent, in the wilfull defiance of the court and its authority, the entire absence of 'any intention of committing a contempt of the court, or any purpose to destroy or impair its authority, or the respect due thereto' is a good defense." It can not be successfully maintained that the information in the instant case sets out acts which are clearly in contempt of this court. Whether they come within the meaning of "practicing law" is debatable and open to more than one construction. The respondent in its verified response denies that it is practicing law; that it has no authority to do so and that it never has and does not intend to do so in the future. And moreover it denies that it ever had or has now any intention to violate any order or rule of this court or to show it any disrespect in any manner. Such an answer is conclusive and a good defense.

In order to constitute a criminal contempt there must be an act done wilfully and with the intention to show

a disrespect for and defiance of the court. Acts may be done which conclusively prove such intent, but where the intent is uncertain from the acts done and when the one charged with contempt denies under oath that he intended to show disrespect to the court or defy the authority thereof and he further shows that the acts he did perform were performed with an honest belief that he had the right to do such thing, then he is purged of contempt and "the answer must, under the well-settled rule of law, be taken as a verity, and it constitutes a complete defense to the charge." *Fishback* v. *State, supra.*

In view of the provisions of our statute relative to the prosecution of those who practice law when not a member of the Bar, what power has this court to punish such person for contempt? It is true that by the Act of 1931, §4-3605 Burns 1933, §825, Baldwin's 1934, this court was given the exclusive jurisdiction to admit attorneys to practice in all courts of the State under such rules and regulations as the court may prescribe. Pursuant to the power given, the court has promulgated and adopted certain rules and regulations for admission. It has appointed a State Board of Law Examiners whose duty it is to investigate the character and fitness of applicants and prepare questions and hold examinations. If the board finds that the applicant is of good moral character and otherwise qualified, and, if the applicant seeking admission by an examination has successfully passed the examination, then a report is made to this court recommending admission and upon this report the court admits the applicant. The court is merely performing a ministerial duty. There are no adversary parties and no judgment is rendered. An order is made admitting the applicant. This court has no jurisdiction over one who is not a member of the Bar and who is practicing law to punish

him for contempt, except for some act which affects or interferes with the functioning of this court, for the reason that there are specific provisions of the Statute of Indiana for this purpose. Sections 4-3601, 4-3602 Burns 1933, §§844, 845 Baldwin's 1934. When the law provides a specific remedy to accomplish a certain purpose, that remedy must be pursued.

Section 4-3601 (§844 Baldwin's 1934), *supra,* provides that it is unlawful for anyone to practice law without being admitted to the Bar and section 4-3602 (§845 Baldwin's 1934), *supra,* provides a penalty for the violation of the law. When one is charged under these sections with the illegal practice of the law he has the right to stand trial either before the court or a jury. He has the right to be heard and introduce evidence, and if convicted, he has the right to an appeal to this court. It is not a summary trial as in a contempt proceeding. If this court can assume jurisdiction to try those who are illegally practicing law on contempt charges then it can take away all the rights of the accused as provided in Article 1, Section 13, of the Constitution of Indiana, which provides:

> "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

What we have heretofore said is not inconsistent with the inherent power of this court to punish for contempt. It has the power, but it is limited to those acts which are in actual contempt of this court, and we are of the opinion that the acts charged in the information in the instant case are not in actual contempt of this court.

It is to be noted that no specific instances of the prac-

tice of the law by the respondent are set out in the information. It would seem that under the sweeping charges contained in the information the relators could have had an affidavit prepared upon some specific charge against the respondent and have filed the same in the proper court where the offense, if any, of "practicing law" had been committed. There are specific provisions of our law for this purpose under sections 4-3601, 4-3602 Burns 1933, §§844, 845 Baldwin's 1934. If this proceeding had been brought in one of the lower courts it would then have been governed by the Act of 1879, and it is certain that under section 3-909 Burns 1933, §886 Baldwin's 1934, pursuant to the response filed herein the respondent would have been entitled to an acquittal. We see no reason why a different rule should apply in this court.

While the question has not been presented in the instant case, it appears that under the opinion in the case of *Denny* v. *State, supra,* the relators are not properly in this court. It is stated in that case that:

(1) The facts in an information charging a criminal contempt of court must be verified by the oath of the informant upon his personal responsibility, and

(2) That the information for a criminal contempt should be entitled: State of Indiana vs. the defendant, and filed as an independent action and prosecuted by the State.

The information herein is sworn to by the attorney for the relator on information and belief and not upon his personal responsibility; and the action is brought by the State of Indiana, on the relation of the Indianapolis Bar Association, and is not prosecuted by the State.

We are not unmindful of the many cases from other jurisdictions cited by the relator in its brief, but the

law and procedure in contempt cases is well settled by the decisions of this court which we are bound to follow instead of those of other states.

We are of the opinion that pursuant to the response filed by the respondent, it is entitled to be discharged.

Respondent discharged.