In the Matter of Owen W. CRUMPACKER.

No. 974S187.

Supreme Court of Indiana.

Feb. 11, 1982.

Owen W. Crumpacker, Hammond, pro se.

Sheldon A. Breskow, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This proceeding is now before the Court on an Order to Show Cause directing the Respondent, Owen W. Crumpacker, to appear and show cause why he should not be held in contempt of an Order of this Court.

Under this cause, the Respondent, Owen W. Crumpacker, was disbarred on November 29, 1978, as an attorney in the State of Indiana. *In re Crumpacker*, (1978) 269 Ind. 630, 383 N.E.2d 36, cert. denied 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406. On January 23, 1981, the Disciplinary Commission of this Court filed a Verified Information for Contempt, in twenty-nine Counts, wherein the Commission asserts that the Respondent, Owen W. Crumpacker, engaged in contemptuous conduct by practicing law in defiance of this Court's order of disbarment. The Order to Show Cause was issued on February 10, 1981; thereafter, several hearing dates were scheduled, but on each occasion continued at the request of Respondent or his counsel of record, John Lyons. A firm date of June 29, 1981, was set for a hearing on the Order to Show Cause. On such date, Respondent appeared without counsel and his request for a further continuance was denied. This matter was heard on June 29, July 2, July 16, and July 21, 1981; Respondent appeared, *pro se*, throughout the hearing. At the conclusion of the hearing, each party was directed to file its respective, proposed findings of fact and permitted to submit a brief in support of its position. Proposed findings of fact in

support of respective positions have been tendered by the parties.

During the course of the proceedings to date, various motions have been filed and the parties were advised of the Court's ruling on the motions. Accordingly, incorporating by reference this Court's decision as set forth in the transcript of the proceedings held in this cause on the above-noted dates, Respondent's motions to strike, quash and dismiss the Verified Information are denied. Respondent's motion to vacate and set aside the previously filed disciplinary action and to dismiss the amended complaint for disciplinary action likewise is overruled. Finally, Respondent's motions for discharge and for the dissolution of the verified information are denied.

There remain several pleadings yet to be resolved. The Disciplinary Commission's request for ruling will be considered at a later point in the opinion. Respondent's "Motion for Stay of Execution and the Fixing of the Terms of Supersedeas Bond" was filed prior to the conclusion of the hearing. In that such motion was premature, it is ordered stricken from the record. Lastly, Respondent's Motion for Oral Argument is now overruled.

As previously stated, the Disciplinary Commission in the Verified Information filed under this cause avers, under twenty-nine counts, that the Respondent engaged in the practice of law after this Court's order of disbarment. In response to this pleading, Respondent has filed a return consisting of five paragraphs. Those contentions which relate to this Court's deliberation of the evidence will be weighed in arriving at our findings of the facts. However, before setting forth our findings, the Respondent's Return has raised several issues which warrant the attention of this Court at this time.

■ At the onset, we observe that Respondent attempts, in good measure, to relitigate the issues determined in the disciplinary action previously concluded under this cause; this Court will not do so. In the contempt proceeding now pending, we begin with the established fact that Respondent was disbarred as an attorney in this state on November 29, 1978, by Order of this Court.

■ Additionally, Respondent attempts to characterize the Order of Disbarment as void by reason of a denial of due process. Respondent argues that the disciplinary proceeding was part of a conspiracy directed against him. A parallel question was addressed in this Court's opinion disbarring Respondent.

The Respondent, as his third affirmative defense, asserts that a former Disciplinary Commission member had a personal, financial interest in the disbarment of the Respondent; and the Commission, acting through this former member and agents "conspired and confederated with other Lake County attorneys for the accomplishment of a corrupt, illegal and unconscionable plan, purpose and scheme," such plan being the removal of the respondent as an opponent in certain litigation. In Volume II of his brief in support of his objections, the Respondent attempts to weave thirty years of litigation in which he has been involved, including these disciplinary proceedings, into one grand master plan of conspiracy involving judges, courts and attorneys. The whole world is a fraud, everyone is driven by corrupt motives, and the only exception to this evil design is the Respondent, Owen W. Crumpacker. Consequently, the Respondent concludes that the whole world is now out to destroy Owen W. Crumpacker.

After examining all matters which have been submitted in this cause, including the transcript of the proceeding before the Hearing Officer, this Court now finds that the Respondent has totally failed in his proof in support of his third defense. The Respondent makes allegations and in the course of questioning witnesses attempts to tie his assertions to events. However, he never accomplishes his purpose; the factual allegations raised in this defense just are not supported by credible, admissible evidence. Accordingly, this Court now finds that

the Respondent's third affirmative defense is without merit. *In re Crumpacker*, (1978) 269 Ind. 630, 634, 383 N.E.2d 36. In that this Court has previously found the conspiracy theory to be without merit, we again find that its naked reassertion in this contempt proceeding to be similarly without credence.

Respondent further alleges that this Court's Order of Disbarment was entered without hearing and notice, that the findings of the hearing officer appointed in the disciplinary action constituted the final adjudication of the issues and the Respondent was subjected to double jeopardy in that the Hearing Officer entered findings of fact and the Supreme Court did not accept such findings. In sum, Respondent is attempting to attach constitutional import to this Court's failure to adopt the Hearing Officer's findings.

Article 7, Section 4, of the Constitution of Indiana grants this Court original jurisdiction as to the admission and discipline of attorneys. Pursuant to this authority, Rules for the Admission and Discipline of Attorneys have been promulgated, which, *inter alia*, establish the procedural format of a disciplinary proceeding. Under this format a Hearing Officer receives evidence and may make a recommendation to this Court. However, this being an original action, the Supreme Court must determine issues of fact, which clearly distinguishes the disciplinary proceeding from an appeal. *In re Pawlowski*, (1959) 240 Ind. 412, 165 N.E.2d 595. The ultimate findings of fact are arrived at through an examination of all matters before the Court, including the transcript; the findings of the Hearing Officer are considered, but not controlling. *In re Wireman*, (1977) Ind., 367 N.E.2d 1368, cert. denied 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402. *In re Murray*, (1977) Ind., 362 N.E.2d 128, appeal dismissed, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777. *In re Pawlowski, Supra.* The procedures governing the discipline of attorneys were employed in the disciplinary action leading to the disbarment of the Respondent. Accordingly, we find no merit to his contention of constitu-

tional deprivation by reason of this Court's findings in the disbarment proceeding.

Further asserting that this Court's Order of disbarment is void, Respondent avers that the Court entered the order without examining the exhibits, which he had in the basement or the record of proceeding. This contention is totally absurd. In our prior opinion we commented on Respondent's refusal to return exhibits:

> In the present case, the Respondent, through the customary courtesies extended attorneys of record, obtained the exhibits considered during the hearing stage of this cause. Ostensibly, such exhibits were obtained to allow the Respondent an opportunity to prepare his response to the petitions for review submitted by the Disciplinary Commission and the complainant. Although stating that he would do so and although being requested to do so on several occasions, the Respondent has failed to return the exhibits placed in his custody and care. The Disciplinary Commission, in their brief, has summarized the relevant exhibits and the Respondent has not specifically objected to such summaries. Accordingly, this Court has employed the summaries submitted by the Disciplinary Commission and taken judicial notice of the records of this Court in its review of the Hearing Officer's findings of fact. (*In re Crumpacker*, (1978) 269 Ind. 630, 637, 383 N.E.2d 36).

The suggestion that the record was not examined likewise is not credible when viewed in the context of our prior opinion.

In view of the above considerations, we find all arguments of Respondent to the effect that this Court's order of disbarment entered November 29, 1978, is void to be without merit. We specifically find such order valid; the Respondent was disbarred as an attorney in this state on that date.

A second general area of contention raised in Respondent's return can be summarized as an assertion that the present contempt proceeding is unconstitutional. Respondent argues that because the unau-

thorized practice of law could be a crime, the contempt proceeding is unconstitutional in that it does not afford the safeguards available to a criminal defendant, citing *State ex rel. Indianapolis Bar Assn. v. Fletcher Trust Company*, (1936) 211 Ind. 57, 5 N.E.2d 538. Respondent goes on to conclude that IC 33-2-1-4, which specifically gives this Court statutory authority to punish for the contempt, is unconstitutional. This latter allegation is unsupported by authority.

Respondent's reference to *State ex rel. Indianapolis Bar Assn. v. Fletcher Trust Co., supra*, is misdirected. This prior proceeding involved an attempt to prosecute the unauthorized practice of law in this court. There was no order of disbarment or any order of this Court. Under such circumstances the Court discharged the defendant after finding that practicing law without being admitted to the bar is unlawful under a statutory provision and, when charged thereunder, a defendant does not stand a summary trial as in a contempt proceeding and is accorded certain rights. The Court thereafter went on to note:

> What we have heretofore said is not inconsistent with the inherent power of this court to punish for contempt. It has the power, but it is limited to those acts which are in actual contempt of this court, and we are of the opinion that the acts charged in the information in the instant case are not in actual contempt of this court. (Id. 211 Ind. 27 at 39, 5 N.E.2d 538).

In view of the above considerations we find the assertion of Respondent to be without merit.

■ It is not surprising that Respondent fails to cite any authority for his contention that IC 33-2-1-4 is unconstitutional. There is none. There is no doubt this Court possesses inherent and statutory power to punish by fine and imprisonment for contempt of its authority and powers. *In re Lemond*, (1980) Ind., 413 N.E.2d 228, *In re Perrello*, (1973) 260 Ind. 26, 291 N.E.2d 698.

■ The *Perrello* case also is dispositive of the remaining issue raised by Respon-

dent, to-wit: that the contempt action must be prosecuted in the name of the state.

The Respondent claims the action is defective because it has not been brought in the name of the State of Indiana. See, *State ex rel. Indpls. Bar Assn. v. Fletcher Trust Co., supra; Denny v. State, supra.* However, the purpose of that rule is to distinguish between civil contempt proceedings and criminal contempt proceedings. It was clear to all, including the Respondent, that this was a criminal contempt proceeding. See, *Allison v. State ex rel. Allison, supra.* The action was brought by official of the State appointed by this Court. It was clearly not brought for any private party. Under the circumstances we feel it unnecessary that the State actually be named. The cause was certainly initiated for the public's interest and prosecuted by an arm of state government. See *Allison, supra.* (*In re Perrello*, (1973) 260 Ind. 26, 30, 291 N.E.2d 698).

By reason of the above considerations, we now find all of the assertions of Respondent challenging the constitutionality of the present proceedings without merit. Accordingly, we now turn to an examination of the allegations raised in the Verified Information for contempt and the evidence before this Court.

■ Upon consideration of all matters of record we find that on or about February 27, 1980, the Lake County Recorder's Office received for recording, a real estate mortgage executed by Arthur and Sarah Bayajian as mortgagers. This mortgage was prepared by Respondent's secretary under Respondent's direction, instruction and control. The face of said mortgage contains a notation that it was prepared by Owen W. Crumpacker. The mortgage was signed before Respondent's part time secretary, Josephine Dolatowski, who was a notary. The Respondent offered this mortgage for recording by a letter of February 27, 1980, wherein he requested that the recorded instrument be returned to him. He also advanced the recordation fee by a check

signed by him and written on the account of "Crumpacker and Associates Attorneys at Law".

During 1980 Respondent employed Norma Kobus as his secretary. Her duties in that position included taking dictation, typing correspondence, and typing legal pleadings and memoranda at Respondent's request and instruction. On or about September 17, 1980, Respondent sent a letter under his signature to Edward Lukowski, Clerk of the Lake Superior Court in Gary, Indiana, requesting that the Clerk file a petition for Respondent on behalf of Joyce Johnson, in the case of *In the Matter of the Estate of Ardinia Upshaw*, Estate No. GE 80–100. The letter was typed by Respondent's secretary, Norma Kobus, under Respondent's instruction, direction and control. The petition enclosed with such letter, entitled Petition of Joyce Johnson, was also prepared by Kobus under Respondent's instruction, direction and control.

Respondent's secretary, Kobus, acting under Respondent's direction, instruction and control, prepared three matters on behalf of Mattie Turnipseed. These matters were a motion blank which was filed on October 31, 1980, by Turnipseed in the Lake Superior Court in the case of *Thomas and Vivian Upshaw v. Mattie Turnipseed*, Cause No. 480–851; a Motion to Vacate and Set Aside Order of October 29, 1980, which motion was filed on October 31, 1980, in the same cause; and a Memorandum to Mattie Turnipseed giving detailed instructions on how the two foregoing matters should be filed.

Respondent's secretary, Norma Kobus, under Respondent's direction, instruction and control, prepared nine legal matters in the cause of *Nancy Sue Van Natter b/n/f John Van Natter v. Meyers Plumbing, Inc.*, Cause No. 580–734 in the Lake Superior Court. These matters were prepared on behalf of Harvey Cleland, President of Meyers Plumbing, and were filed in the Lake Superior Court. The pleadings were as follows: (1) a proposed minute entry for a motion for a change of venue, which was prepared on or about October 1, 1980, and was filed on October 2, 1980; (2) a Motion for Change of Venue, prepared on or about October 1, 1980, and filed on October 2, 1980; (3) an Answer prepared on or about October 1, 1980, and filed on October 2, 1980; (4) a proposed minute entry whereby Harvey Cleland, as signed by Respondent, struck a county; (5) a proposed minute entry for a motion to strike, prepared on or about October 9, and filed on October 10, 1980; (6) a Motion to Strike and Expunge, filed on October 10, 1980; (7) a proposed minute entry for another motion to strike and expunge, which minute entry was prepared on or about October 31, 1980, and filed on October 31, 1980; (8) a Motion to Strike and Expunge Entry of October 27, 1980 for Want of Notice and Hearing, which motion was filed on October 31, 1980; (9) an affidavit of Harvey Cleland, President, also filed on October 31, 1980.

Respondent's secretary, Kobus, prepared on or about November 7, 1980, a proposed minute entry and a Motion for Protective Order in the cause of *Mattie Upshaw Turnipseed and Dallas Perkins v. Thomas Upshaw and Vivian Upshaw*, Cause No. 180–1030 in the Lake Superior Court. She prepared these matters under the direction, instruction and control of the Respondent. The motion and proposed minute entry were filed in the Lake Superior Court on November 7, 1980.

In the case of *James D. Justak and Barbara J. Justak v. Margaret Justak*, Cause No. 580–378 in the Lake Superior Court, Respondent's secretary, Kobus, prepared four legal matters. She prepared such matters on or about September 22, 1980, on behalf of Margaret Y. Justak, under the direction, instruction and control of the Respondent. The four pleadings were as follows: (1) a proposed minute entry for appearance *pro se*, filing for an Answer and a Cross Complaint; (2) a Motion for Change of Venue from the County; (3) a Counter-Claim; and (4) an Answer. The foregoing matters were filed on or about September 22, 1980.

We also find that on or about October 16, 1979, Respondent wrote a letter to Richard Timmons, Clerk of the United States Dis-

trict Court in Hammond, Indiana, on stationary with a letterhead reading "Owen W. Crumpacker and Associates Attorneys at Law".

On or about May 6, 1980, Respondent drafted and signed a check payable to Robert A. Welsh for a witness fee of $41.50. The check named the drawer as "Crumpacker and Associates Attorneys at Law".

Furthermore, we find that the 1980 editions of the Indiana Bell Telephone Yellow Page Directories for four different areas in Lake County, Indiana, listed Respondent, his office address and telephone number under the heading of "Lawyers". This advertisement appeared in the directories for Hammond, Highland-Griffith-Munster, Gary, and East Chicago-Whiting. Respondent caused said listings to appear by returning a signed telephone billing acknowledgement to the Indiana Bell Telephone publishing agent on or about February 19, 1980.

On or about January 6, 1981, Respondent prepared a proposed minute entry on behalf of August Ignelzi for the case of *Besozzi, Carpenter & Ignelzi, Inc. v. NHE/Indiana, Inc.*, Cause No. 177–518. On January 6, 1981, Respondent appeared before the Honorable Cordell Pinkerton and offered the proposed minute entry to Judge Pinkerton for his signature. The said proposed minute entry was filed on January 6, 1981.

On or about January 5, 1981, Respondent prepared a Motion for Bill for Costs on Behalf of August Ignelzi. Respondent signed and dated the certificate of service. The motion was filed with the Clerk of the Lake Superior Court on January 6, 1981, in the case of *Besozzi, Carpenter and Ignelzi, Inc., v. NHE/Indiana, Inc.*

The foregoing findings establish that following his disbarment on November 29, 1978, Respondent held himself out as a lawyer by advertising as such in the yellow pages of the telephone directories of the population centers in his home county. Respondent corresponded on stationery identifying him as a lawyer and also made payment with checks containing similar designations. During the period of time in issue, the Respondent advised clients by legal memorandum; he prepared legal pleadings on behalf of others and either filed the same or had them filed. Under the guise of having his clients appear *pro se*, Respondent, in effect, took on their cases and acted on their behalf in a representative capacity. Whether or not he charged any fees for his services cannot affect the foregoing facts. In light of the overwhelming evidence we are left but with one conclusion, following his disbarment on November 29, 1978, the Respondent continued to hold himself out as an attorney and engaged in the practice of law.

Having found from the evidence adduced at trial that Respondent did engage in the practice of law we must determine if such conduct is contemptuous of this Court's order of disbarment.

A criminal contempt can be any action which manifests a disrespect for and defiance of a court. The willful and intentional disobedience of the orders of a court can constitute indirect criminal contempt. *In re Lemond, Supra, In re Perrello, Supra.* The question of intent is a question of fact to be decided after hearing all the evidence. *In re Perrello, Supra.*

The Respondent in this case was disbarred on November 29, 1978. Thereafter, he continued to advertise himself as an attorney and continued to act in a representative capacity on behalf of others. Furthermore, Respondent has persisted in not merely disagreeing with the Order of this Court, but in refusing to acknowledge the fact that he has been disbarred. Throughout this proceeding he repeatedly refused to acknowledge such fact as he consistently referred to the opinion and order of disbarment as a "twenty-seven page disciplinary action filed in the office of the Clerk of the Supreme Court of Indiana". It is our conclusion that Respondent's acts, as proven, were willful and intentional disobedience of this Court's Order.

As we stated in *Perrello, Supra*, "the punishment imposed is a vindication of the Court's authority but we also hope that it

will act as a deterrent for ... all others who might harbor the thought of defying an order of this Court". 260 Ind. 26 at 30, 291 N.E.2d 698. Respondent's blatant disregard for this Court's order disbarring him was evidenced even during the hearing of this proceeding when Respondent tendered payment to a witness on a check designating Owen Crumpacker as an attorney at law. The evidence in this case establishes that Respondent acted in contempt of this Court on twenty-eight occasions. This Court will not tolerate willful and intentional disregard of its orders. We would be remiss in fulfilling our constitutional duties if we allow contempt of this nature to go unpunished. The authority vested in this Court must be recognized and enforced or our judicial system will cease to function as a system of justice. Contempt of this Court has been clearly proven. Accordingly, we now hold that Respondent is guilty of criminal contempt of this Court.

On July 2, 1981, in the course of this proceeding, Respondent was cited for contempt; ruling at that time was taken under advisement. This citation for contempt came after Respondent failed to heed repeated admonishments of the court, thereby disrupting the proceeding. The Disciplinary Commission now asks for a ruling on this matter. Accordingly, we find that Respondent engaged in direct criminal contempt of this Court.

In view of our findings, the Respondent, Owen W. Crumpacker, is sentenced to serve a term of ninety days in the Indiana State Farm for indirect criminal contempt of this Court, sentenced to serve a concurrent term of ninety days in the Indiana State Farm for the direct criminal contempt of this Court, and is further fined in the amount of five hundred dollars ($500.00). Those provisions of law authorizing the diminution of sentence for good time served shall not apply.

Costs of this proceeding are assessed against the Respondent.

PIVARNIK, J., not participating.