[Civ. No. 15691.   Second Dist., Div. One.   Feb. 11, 1948.]

THE PEOPLE, Respondent, v. CITY OF LOS ANGELES et al., Defendants; CITY OF CULVER CITY et al., Appellants.

M. Tellefson, City Attorney (Culver City), Henry McClernan, City Attorney (Glendale), John H. Lauten, Assistant City Attorney, Joseph R. Roark, Deputy City Attorney, Thomas V. Cassidy, City Attorney (Vernon), Edward R. Young, E. L. Searle, Special Counsel, Richard C. Waltz, City Attorney (Beverly Hills), Richard L. Sieg, Charles S. Callahan, Assistant City Attorneys, Salisbury & Knudson and Hugh Gordon for Appellants.

Fred N. Howser, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

WHITE, J.—This is an action in equity instituted by the people of the State of California against all the above-named defendants and appellants and certain of their officers and employees, to restrain them from maintaining, without a permit from the State Board of Public Health, any sewage treatment works, sewers and pipes or conduits, or other pipes or conduits for the treatment or discharge of sewage; to restrain the defendants from discharging into any of the salt waters of the state any sewage, impure waters, or matters offensive, injurious or dangerous to the public health, and to restrain the defendants from maintaining a public nuisance on Santa Monica Bay by reason of their deposits therein of sewage and other matters offensive and injurious or dangerous to public health, or deleterious to fish or plant life; and further, for a judgment that the defendants be required to plan, finance, construct, operate and maintain sewage treatment works, sewer pipes and conduits for the safe and sanitary disposal of sewage; and for the abatement of a public nuisance.

Two causes of action are set up in the complaint, the first of which charged the operation of sewage treatment works, sewer pipes and conduits, and the discharge of sewage into

the salt waters of the state without a permit; while the second sought to restrain the maintenance of a public nuisance.

Judgment was ordered for plaintiff on both counts, but defendants were given until December 31, 1947, to abate the nuisance.

The only defendants appealing from the judgment are the city of Culver City, its defendant officers and employees; city of Vernon, its defendant officers and employees; South Bay Cities Sanitation District of Los Angeles County, a public corporation, its defendant officers and employees; County Sanitation District No. 4 of Los Angeles County, a public corporation, its defendant officers and employees; County Sanitation District No. 11 of Los Angeles County, a public corporation, its defendant officers and employees; city of Glendale, its defendant officers and employees; and city of Beverly Hills, its defendant officers and employees. The appeal of the last-named municipality and its officers and employees was on motion dismissed by this court.

The factual background surrounding this litigation, as reflected by the record, shows that when some years ago appellant cities and sanitation districts were confronted, because of increasing population, with the necessity of finding a solution to their sewage disposal problems to avoid endangering the health and welfare of their inhabitants, they found themselves financially unable to construct an adequate sewer system which would carry their sewage to the Pacific Ocean or to another location which might safely be used for sewage disposal works without endangering the health and welfare of the inhabitants of other communities which might be affected by any sewage disposal facilities within the financial means of these various municipal and public corporations to construct.

In the meantime, the city of Los Angeles had constructed and was operating an outfall sewer system, the capacity of which was greatly in excess of the then foreseeable needs of the inhabitants of that city. When it became apparent that the sewage of the aforesaid municipalities must be provided with disposal facilities without further delay, each of them turned to the city of Los Angeles, seeking the use of the latter's sewage disposal facilities for a solution of their very acute problems. Thereupon, commencing in 1909, when the city of Vernon made its first contract with the city of Los Angeles for the disposal of sewage originating within

the territorial limits of the former municipality, and during the years immediately following, each of the above-named appellant municipalities, and later still the foregoing appellant sanitation districts, made contracts with the city of Los Angeles under the terms whereof the last-named city agreed, for a cash consideration, to dispose of some or all of the sewage originating within the particular contracting municipalities and sanitation districts. It is noteworthy that the contracts between the city of Los Angeles and the other municipalities and sanitation districts under discussion were for an indefinite period, or, in some instances, for the life of the outfall sewer system itself, and in no instance carried any provision permitting the contracts to be cancelled when or if the city of Los Angeles required the use of that portion of the capacity of its outfall sewer system covered by the above-mentioned contracts.

In 1922, the city of Los Angeles filed its application with the State Board of Public Health of the State of California for a permit to dispose of sewage through its outfall sewer system into Santa Monica Bay in the Pacific Ocean at Hyperion; and subsequently, pursuant to a permit or order issued January 6, 1923, constructed a treatment plant and submarine tube at Hyperion, which at all times since completion have been used by the city of Los Angeles for the treatment and disposal of all of the sewage disposed of by the Los Angeles Outfall Sewer System, including that sewage flowing into the Los Angeles Outfall Sewer System from the various other municipalities and sanitation districts mentioned above, pursuant to their contracts with the city of Los Angeles for its disposal.

The record shows without contradiction that the Los Angeles Outfall Sewer System, the treatment plant at Hyperion and the submarine tube extending into the Pacific Ocean at that point are owned in their entirety by the city of Los Angeles, and that none of the appellants contracting with the city of Los Angeles for the disposal of their sewage through that outfall sewer system owns or has any right, title or interest in or to the sewer system, treatment plant, or the submarine tube extending into the Pacific Ocean.

There is evidence that on September 30, 1940, and for a long time prior thereto, the city of Los Angeles had violated the terms of the permit of January 6, 1923. In brief, these violations were as follows: A large portion of the sewage

was not screened and some of the screen slots were larger than authorized, and frequently raw sewage was by-passed around the screen and discharged either into the submarine tube or directly on the beach. Garbage, fecal matter, solid matter and oily sludge, recognizable as of sewage origin, was visible on all the beaches on Santa Monica Bay from State Park Beach located at the mouth of Santa Monica Canyon south to Malaga Cove. The quality of water along the beach was not safe and suitable for bathing purposes as a result of such discharge and the bacterial count of *escherichia coli* had exceeded 10 per cubic centimeter in an area extending along the beach for a distance of approximately 10 miles from Brooks Avenue north of the Venice Pier in Los Angeles to 14th Street, north of the Hermosa Beach Pier in Hermosa Beach. During the year 1945, said area on the north was extended to Seaside Terrace in the city of Santa Monica. There was an objectionable odor condition in the waters and along the beach used by the public. The operation of the treatment works and the disposal of screenings had been conducted in such a manner that it was a menace to public health and had created an offensive odor nuisance. Additional treatment works, changes in outfall, improvements in operation, and ordinary maintenance, had not been provided by defendant city of Los Angeles nor by the other corporate defendants.

By reason of the foregoing violations, the State Board of Public Health, on September 3, 1940, suspended the permit and notified the city of Los Angeles, but granted said city a temporary permit upon condition that it proceed at once to prepare plans for the construction of adequate treatment works and outfall structures, and for the financing of the necessary construction. Such plans were to be filed with the state board and the city was to be ready to commence construction within a year from date. The city of Los Angeles and its officers failed to comply with the terms of the temporary permit, and the State Board of Public Health, on May 18, 1942, revoked said temporary permit and notified the city of Los Angeles thereof. Permits held by certain other defendant municipalities and sanitation districts were also revoked.

All of the appellants concede that a public nuisance existed and that the findings in that regard must be sustained. Indeed, as found by the court, the pollution of the beach was a matter of common knowledge. So much so, that approxi-

mately 10 miles of beach were quarantined by the State Board of Public Health on April 3, 1943, and following a survey made in 1945 by the State Board of Public Health, it was disclosed that the conditions existing at the beach had become steadily worse since the summer of 1942, and the State Board of Public Health thereupon quarantined an additional area extending from Brooks Avenue in Venice to Seaside Terrace in Santa Monica, on the northerly end of the theretofore quarantined area. With reference to the conceded existence of a public nuisance, we quote the following from the brief filed on behalf of all but two of the appellants:

". . . we believe it suffices to say that the testimony and other evidence introduced by plaintiff established without question the existence of an unhealthful and unsanitary condition in the waters of the Pacific Ocean adjacent to the Santa Monica Bay Beach and extending some 15 miles along that beach, and that plaintiff's testimony, likewise, conclusively showed the existence of a condition not only unsanitary but dangerous to the health of any one making use of the beaches immediately adjacent to the contaminated waters of the Pacific Ocean in Santa Monica Bay. We repeat, there can be no question that this condition was adequately and conclusively proven."

Upon the conclusion of plaintiff's case, at the request of plaintiff's counsel, paragraph V of the complaint was stricken by the court, leaving the pleading without an allegation that the corporate defendants other than the city of Los Angeles owned any right, title or interest in or to the Los Angeles sewer system, the Hyperion plant or the Hyperion submarine tube, or that said defendants, other than the city of Los Angeles, had any right to repair or rebuild the treatment plant or the submarine tube.

By their answers, each of the defendant municipalities and public corporations alleged in substance that the Los Angeles Outfall Sewer System, the Hyperion treatment plant, and the submarine tube were owned in their entirety by the city of Los Angeles, which said city was the only one having any right to operate, maintain or repair the same or any portion thereof. The answers further alleged that the particular municipality or public corporation filing such answer had contracted with the city of Los Angeles for the disposal of sewage originating in the particular municipality or public corporation in question. Each answering defend-

ant alleged that it had no right or jurisdiction to make any repairs, replacements or changes of any nature whatsoever which concerned or affected the Los Angeles Outfall Sewer System, treatment plant or submarine tube, but that on the contrary, the city of Los Angeles had undertaken and agreed by said contracts to operate and maintain said sewer system, including the treatment plant and submarine tube, and to dispose of the sewage entering the same from within the territorial area of the particular contracting parties.

We deem it unnecessary to set forth the findings of the court other than those challenged by appellants. The court found that on February 14, 1944, the city of Los Angeles employed the engineering firm of Metcalf and Eddy, of Boston, Massachusetts, as consulting sanitary engineers, to investigate the problem of sewage disposal for Los Angeles and associated communities, and to make a report and recommendation for the disposal of sewage from Los Angeles and the corporate defendants named in this action. The report was made on April 25, 1944. The recommendation contained therein was for a high-rate activated sludge plant having a capacity which was the same as the capacity of the existing trunk lines to Hyperion, that is, 240,000,000 gallons per day. That two sites were considered feasible, one at Hyperion now owned by the city of Los Angeles, and the other privately owned land near by, but that the expense of grading and draining the latter site would cost approximately $1,000,000 more than the site at Hyperion. The findings then go into the more technical engineering phases of the plant. It is then found that the recommended plant would produce a clear effluent and would remove most of the grease and at least 75 per cent of the suspended solids from the sewage. That the use of the treatment plant and the new submarine tube as recommended would entirely abate the nuisance created by the discharge of sewage at Hyperion. That the State Board of Public Health had not officially acted upon a permit, but during the trial the Bureau of Sanitary Engineering of said state department had indicated that the proposed treatment plant would be entirely satisfactory. It might here be noted that there was no contradiction of the fact, of which this court may take judicial notice, that the State Department of Public Health did, on April 10, 1946, grant a permit to the city of Los Angeles to construct and use such a treatment plant.

The court further found that on May 12, 1944, the City Council of Los Angeles and its Board of Public Works accepted and approved said report from the above-named consulting engineers and ordered the city engineer to proceed at once with the design of said proposed treatment plant. The findings then detail the specific steps that had been taken by defendant city of Los Angeles toward the construction of such treatment plant.

The court further found the only other plan for abating the nuisance would be the construction of a sewage treatment plant of what is known as a sedimentation process, which would remove approximately 60 per cent of the suspended solids and grease; that such a plant was recommended by a firm of consulting sanitary engineers of the city of Los Angeles in 1939, but that the recommendations expressly stated that the capacity of such plant would be reached by the year 1944. That the capacity of such plant could be enlarged by construction of a 10,000-foot submarine tube instead of a 5,000-foot one, but that no detailed plans or specifications of any nature whatsoever had been drafted for such proposed alternate plant.

The court found that it was to the best interests of all the defendants to dispose of the sewage arising in each particular area of said corporate defendants and each corporation to discharge its sewage through a treatment plant to be built at Hyperion, and after such treatment to discharge the effluent from there into the Pacific Ocean at not less than 5,000 feet from shore. The court then found that the defendants city of Beverly Hills, city of Culver City, South Bay Cities Sanitation District, and Sanitation Districts Nos. 4 and 11, among other defendants, had no other feasible means whatsoever of disposing of sewage originating in the areas of said corporate defendants. It was found by the court that the defendant city of Vernon and other named defendants could, at additional expense far greater than their proportionate share of construction of a new proposed high-rate activated sludge treatment plant, dispose of sewage arising in the corporate limits of said cities through the sewage system of the County Sanitation District, which treatment plant is located at Harbor City, and the effluent of which is discharged into the Pacific Ocean at White's Point near San Pedro.

With reference to the defendant city of Glendale, the court found that it may have an alternative method of disposing of sewage; that a report and recommendation of a consulting engineer was received in evidence, but that no application had been made to the State Board of Public Health for a permit to construct such a plant. The court further found that it did not determine in this proceeding the feasibility of such a proposed plant, but did find that the natural and probable consequences of the discharge of the effluent from there into the Los Angeles River would be the contamination through percolation of the wells of the communities to the south and west of the Los Angeles River as far as the Inglewood Basin.

The court further found that defendant city of Los Angeles had a sufficient unexpended balance to pay for the engineering services for the completion of final plans and specifications for the high-rate activated sludge treatment plant; that said city had appropriated $2,000,000 for the submarine tube; that at the time of trial said city had approximately $7,200,000 in its reserve fund; and that on April 3, 1945, a bond issue was voted by the electorate of the city of Los Angeles in the sum of $10,000,000 for the payment of the share of said city for the construction of said high-rate activated sludge plant.

It was then found that the city of El Segundo, the city of South Pasadena, the city of Alhambra, and Universal Pictures have at all times prior to the determination of this action been willing and able to pay their respective proportionate shares of said new high-rate activated sludge treatment plant, as was the defendant A. F. Gilmore Company; that on December 4, 1945, the city of Santa Monica approved a bond issue in the principal sum of $875,000 for the purpose of acquisition or the right to use a sewage treatment plant and disposal works under contract to be made with the city of Los Angeles, or other cities, and is now ready, willing and able to pay for its share.

The court then found that except for the defendants set forth in the three preceding paragraphs of the findings, none of the corporate defendants had funds available for the payment of its proportionate share of the cost of a new treatment plant, and that none of them had taken any steps whatsoever to raise funds either by bonded indebtedness or otherwise for the payment of such proportionate share.

With reference to the expense, and the agreement among the various defendants concerning the construction, of the new treatment plant, the court found as follows:

"That it was agreed by those present at a meeting of the City Engineers of the various cities, the Chief Engineer and General Manager of the County Sanitation Districts named as defendants herein and representatives of the private corporations named herein, that there be allocated to the defendants the ultimate capacity of said proposed new high-rate activated sludge treatment plant according to the figures on Exhibit 23; that the proportionate cost of each of the corporate defendants was based upon a total estimated cost of $21,000,000.00; and the cost to each corporate defendant was in the ratio of the gallonage allotted to 240 as the estimated share to be contributed by each corporate defendant is to 21,000,000; that said estimated share of expense was arrived at on the basis of the percentage ultimate flow in the new plant to the total cost thereof and without reference to any other obligations or liabilities as between the City of Los Angeles and the separate respective corporate defendants."

The court then found that it was feasible to have installed, ready for operation, six chlorinating machines by June 1, 1946, and to let a contract for a new submarine tube by April 1, 1946; that it was feasible to have all the detailed plans for the entire new plant completed by July 1, 1946; that it was feasible to advertise for bids for the excavation of the site and to award a contract by March 1, 1946; and that it was feasible to have fully constructed, in its entirety and in full operation, the said proposed new high-rate activated sludge treatment plant by December 31, 1947. That at the time of the signing of the findings the feasibility of intermediate steps could not be determined presently, but if necessary at some future date, evidence of such facts might be received.

Insofar as pertinent to a consideration of the issues raised on this appeal, as conclusions of law the court determined that the defendants have and are maintaining a public nuisance in Santa Monica Bay by the discharge of sewage at Hyperion; that the primary duty and obligation rests upon each corporate defendant to dispose of the sewage originating within its respective limits in a safe and sanitary manner;

that any right created by contract between two several defendants did not release either or any of them from the primary obligation to dispose of sewage in a safe and sanitary manner; that regardless of contractual or other relationships existing among the defendants, the plaintiff was entitled to an injunction restraining each and all defendants from maintaining, without a permit from the State Department of Public Health, any sewage treatment works or other facilities for the treatment or discharge of sewage into Santa Monica Bay, such injunction to be effective on and after December 31, 1947. That the plaintiff was entitled to an injunction restraining each one of the defendants from discharging into any of the salt waters within the jurisdiction of the State of California, any sewage or other matter or substance in any manner likely to be offensive, injurious or dangerous to the public health, effective on and after December 31, 1947.

As further conclusions of law, the court determined:

"That the plaintiff is entitled to a mandatory injunction requiring the defendants and each of them and their successors, officers, agents, servants and employees to plan, construct, operate and maintain sewage treatment works, pipes and conduits for the safe and sanitary disposal of sewage within as short a time as is feasible; and in this connection the plaintiff is entitled to such other and further orders as may be made from time to time requiring the defendants and each of them and their successors, officers, agents, servants and employees to take such additional steps within such additional time as may be determined by the court for the temporary or permanent abatement of the public nuisance stated herein."

And further:

"That each corporate defendant which does not adopt some approved method of disposing of sewage originating in the corporate limits of such defendant other than through a new treatment plant or works at or near Hyperion shall be required to advance the proportionate share of such corporate defendant according to the ultimate proportionate use reserved for such defendant towards the construction of a new treatment plant or works at or near Hyperion; *but no corporate defendant shall be prevented from adopting some other method of disposing of sewage originating in the corporate limits of such defendant providing such method is approved by the State Board of Public Health of the State of Califor-*

*nia, and that such method is a safe and sanitary method of disposal of sewage, and providing that said plan or method is in full operation on or before the 31st day of December, 1947."* (Emphasis added.)

Judgment was entered accordingly.

Appellants first challenge the right of the court to require them to abate a nuisance resulting from unhealthful conditions caused by sewage emptied into the salt waters within the jurisdiction of the State of California where such sewage is emptied into the ocean through the outfall sewer system, treatment works and submarine tube owned in their entirety by and under the exclusive jurisdiction and control as to maintenance and operation of another municipal corporation where the latter corporation has, by contract with the appellant municipalities or public corporations, undertaken, for a price, to accept such sewage and to dispose of the same in the Pacific Ocean through its outfall sewer system, treatment works, and submarine tube, in a good and workmanlike manner, and without creating a public nuisance. Appellants rest their claim in this regard on the premise that the instrumentality causing the nuisance must be shown to have been owned, operated and controlled by a defendant sought to be enjoined, either alone or acting jointly with all other defendants, and that to validate the judgment entered herein, it must be shown that the presence of the sewage in the waters of Santa Monica Bay and on the shores adjacent thereto, which caused the nuisance, resulted from the unlawful or negligent act of each defendant named in the judgment, acting alone, or in concert with all other defendants.

Insofar as the cause now engaging our attention is concerned, we are not in accord with appellants' contention.

The instant proceeding is predicated upon two separate causes of action, the first of which is for violation of the health and safety provisions of the Health and Safety Code, and the second for the maintenance of a nuisance. Judgment was granted on both causes of action.

Sections 5410 to 5464 of the Health and Safety Code contain the law applicable to the disposal of sewage. In section 5414 it is provided that no person, without a permit, shall maintain any sewage treatment works, pipes or conduits for the treatment and discharge of sewage whereby such sewage shall empty, flow, seep, drain, condense into or otherwise

pollute or affect any of the salt waters within the jurisdiction of the state. Section 5418 provides that no person, without a permit, shall deposit or discharge any sewage, trade waste, etc., into any salt waters within the jurisdiction of the state. Section 5420 provides that no person, without a permit, shall maintain any sewage treatment works, sewer pipes or conduits for the treatment or discharge of sewage. Sections 5421 to 5430 relate to the applications for permits, hearings, notices, investigations, etc., the findings requisite to issuance of a permit and conditions warranting a denial. Section 5438 provides that this article of the Health and Safety Code does not limit the power of any city or county to declare, prohibit and abate nuisances or limit the power of the State Department of Public Health to declare or abate nuisances. Section 5442 provides for the suspension of a permit.

Section 5443 provides that violation of this article of the code may be enjoined by any court of competent jurisdiction or by the State Department of Public Health. Section 5444 provides that anything done, maintained, or suffered in violation of any of the provisions of this article is a public nuisance, dangerous to health, and may be summarily abated as such.

Sections 5460 to 5464, relating to penalties for violations of the foregoing code provisions, may be disregarded for the reason that during the trial penalties in this proceeding were waived.

The evidence shows that the city of Los Angeles had a permit to discharge sewage at Hyperion from the time of the construction of the screening plant and submarine tube at Hyperion until September 3, 1940, when the permit was suspended. At the time of the suspension of the permit a temporary permit was issued pursuant to section 5435 on condition that the city proceed at once to prepare plans and construct necessary works. The conditions of the temporary permit were not complied with, and on May 18, 1942, the State Board of Public Health revoked the temporary permit. The appellant County Sanitation District No. 11 never at any time had a permit of any kind whatsoever from the State Department of Public Health to maintain any sewage treatment works, sewage pipes, or conduits, or to discharge any sewage into the salt waters of the state. The appellants city of Culver City, city of Vernon, County Sanitation District No. 4 and South Bay City Sanitation District each held a

permit from the State Board of Public Health to connect its sewage system to the sewage system of the city of Los Angeles and thereby discharge its sewage at said Hyperion plant, but each of said permits held by said appellants was revoked by the state board on October 16, 1943.

None of the appellants can successfully contend that it is not maintaining sewage treatment works, sewer pipes or conduits for the treatment and discharge of sewage into the salt waters within the jurisdiction of the state, because it was shown quite precisely the amount of such discharge by each of said appellants.

The instant action was instituted in the name of the people of the State of California, on behalf not only of the people, but of the State Department of Public Health, the State Fish and Game Commission and the State Parks Commission. The court was, therefore, pursuant to the provisions of section 5443 of the Health and Safety Code, clothed with jurisdiction, in a proper case, to restrain appellants from maintaining any sewage treatment works and from depositing and permitting to drain into the salt waters of the state any sewage, without a permit from the State Department of Public Health.

The statutory requirement that the city of Los Angeles have a permit, as required by sections 5414, 5418 and 5420 of the Health and Safety Code, was not affected by any contracts appellants may have had with said city to dispose of their sewage through the screening plant and submarine tube at Hyperion. While the State Department of Public Health was cognizant of the existence of some of such contracts due to the fact that permits had previously been issued to some of the appellants for the discharge of their sewage at Hyperion, nevertheless such state department is not bound by the terms of contracts with others than itself, and the statutory power to suspend or revoke such permits is not affected or controlled by a contract existing between the permittee and others.

The evidence is uncontradicted that on October 16, 1943, prior to the commencement of this action, the permits held by the appellants, as well as that held by defendant city of Los Angeles, were revoked by the State Department of Public Health. Therefore, under the provisions of the Health and Safety Code hereinbefore set forth, the judgment rendered

herein, and based upon plaintiff's first cause of action, could well be affirmed.

However, because of the great public interest attached to this litigation, and its importance to the municipalities and public corporations affected thereby, we are disposed to give consideration to the contentions of appellants that because of their aforesaid contractual relations with the city of Los Angeles, they were not responsible for the admittedly existing unhealthful condition, and cannot be required to abate a conceded public nuisance resulting therefrom.

In support of their contention that they are not legally responsible for the maintenance of a nuisance and cannot be held liable for the cost of abating the same because the instrumentality causing such nuisance was neither owned by them nor under their jurisdiction or control, appellants lean heavily upon the case of *Carmichael* v. *City of Texarkana*, 94 F. 561, and 116 F. 845 [54 C.C.A. 179, 58 L.R.A. 911]. In this case riparian owners of a stream sued a city and joined therein either individual householders or industries as parties defendant, for the pollution of the stream by the discharge of sewage therein. The court held that the inhabitants and industries within the city were improperly joined with the municipality in the action, on the ground that the inhabitants of the city had no right or authority to construct or operate a sewer system within the municipality and that they had no control over the manner of its construction, repair or alteration, because all such control was by law vested in the city or town; that the law required the city to operate a sewer system within its boundaries and required it to do so in such a manner that no unnecessary injury would be inflicted upon anyone. Holding that the test of liability for the action of another is the power to command or control the manner of the performance of those actions, the court pointed out that the inhabitants were without authority to construct or operate a sewer system, but were possessed of the right to have the city dispose of their sewage by means of a system constructed and operated exclusively by the municipality in such a manner as to avoid injury to others. In other words, the inhabitants were not acting jointly with the city in the operation of the sewer system. To the same effect are the cases of *Adler & Co.* v. *Pruitt,* 169 Ala. 213 [53 So. 315, 32 L.R.A.N.S. 889], and *Hampton* v. *Spindale,* 210 N.C. 546 [187 S.E. 775, 107 A.L.R. 1188], also cited by appellants.

No such situation, however, confronts us in the case at bar. No inhabitants of any municipality or public corporation are joined as defendants herein.

A primary obligation rested upon appellants to dispose of sewage accumulating within their respective boundaries, and an equally binding obligation rested upon them to dispose of the sewage in such a way that it would entail no injury to other parties. And appellants cannot relieve themselves by contract with other municipalities of their primary obligation imposed upon them by law. In the case at bar, the most that can be said is that by contract with the city of Los Angeles, the latter afforded to appellants the use of its sewer facilities to carry and dispose of appellants' sewage at Hyperion. Each appellant proportionately started the chain of circumstances that caused the nuisance sought to be abated when they emptied their sewage into the outfall sewer of the city of Los Angeles. The mere fact that appellants had a contract with the city of Los Angeles for the disposal of such sewage does not in the least enter into the merits of this action as between the people of the State of California and appellants for abatement of a nuisance arising from pollution of salt waters within the jurisdiction of the State of California and of the adjoining beaches, by sewage originating in part within the territorial limits of the aforesaid appellant municipalities and public corporations. There rested upon appellants a bounden duty to dispose of their sewage in such a manner as not to bring injury or damage to others. It therefore follows, that the fact that the screening plant and submarine tube at Hyperion are owned, maintained and controlled by the city of Los Angeles does not relieve appellants of responsibility for the admitted public nuisance sought to be abated, if they contributed thereto.

The trial court was not concerned, and rightly so, with the contractual relations, privileges and obligations between appellants and the city of Los Angeles, because such contracts will not relieve appellants of an obligation imposed upon them by law. And the liability of appellants was not minimized or affected by the action of the court in striking from the complaint the aforesaid paragraph V.

Appellants' contention that it is improper in a single action to join defendants whose actions separately constitute a nuisance, but that each must be sued separately, is without merit. Whatever may be the rule in other jurisdictions or

was formerly the rule in California, since the adoption of section 379a of the Code of Civil Procedure the rule no longer exists.

Appellants' claim that negligence upon their part is a necessary element in an action to abate a nuisance is equally without merit. So far as this case is concerned, the question of negligence is wholly irrelevant. There may be cases wherein the question of whether the maintenance of a given condition amounts to a nuisance depends upon whether or not it is due to negligence, but the pollution of ocean waters and adjoining beaches in the manner charged herein is a violation of the rights of the people of the State of California, which amounts in law to a nuisance, regardless of whether or not it is due to any negligent act or omission (*Kafka* v. *Bozio,* 191 Cal. 746, 748 [218 P. 753, 29 A.L.R. 833]).

We also regard as immaterial the question of whether the Los Angeles City Outfall Sewer System, treatment plant and submarine tube constitute a public utility, and that as the owner and operator of such public utility the city of Los Angeles is the only party against whom a cause of action herein could be stated. There is no evidence, and certainly it cannot be successfully contended, that the city of Los Angeles operates a public utility for the benefit of appellants or other municipalities or public corporations.

We come now to a consideration of appellants' contention that the trial court was without power to dictate or prescribe the means or facilities which shall be used or constructed to abate a nuisance, or to set forth the means or facilities which it deems necessary to prevent a continuance or recurrence of the nuisance by reason of causes not then in existence but anticipated to occur in the future.

We are in accord with the claim of appellants that the court does not possess the power to indicate or prescribe the means or facilities that shall be constructed or used to abate the nuisance. However, an examination of the record herein reveals that the court did not decree or prescribe the means or facilities to be used, nor require that any particular plant be built. Conclusion of Law XI, hereinbefore set forth, provides that only those appellants who do not adopt *some* approved method of disposing of their sewage, other than through a new treatment plant or works at or near Hyperion, "shall be required to advance the proportionate share of such corporate defendant according to the ultimate

proportionate use reserved for such defendant towards the construction of a new treatment plant or works at or near Hyperion; *but no corporate defendant shall be prevented from adopting some other method of disposing of sewage* originating in the corporate limits of such defendant, providing such method is approved by the State Board of Public Health of the State of California, and that such method is a safe and sanitary method of disposal of sewage, and providing that said plan or method is in full operation on or before the 31st day of December, 1947.'' (Emphasis added.)

The judgment also gives to each appellant the opportunity to determine whether to withdraw from the Los Angeles city system and set up any method of treatment of their sewage which would take it from the Los Angeles system and thereby remove it as a contributing cause to the admittedly existing nuisance. It should be remembered that the city of Los Angeles was also a defendant in the present proceeding, and throughout the trial took the position that it desired to abate the nuisance and that it already was engaged in planning for the construction of a new sewage treatment plant. During the trial, the court heard evidence as to the nature of those plans and also heard evidence concerning all other possible or suggested plans. None of the appellants had any plan whatever other than that of the city of Los Angeles, except the city of Glendale, which had hired a consulting engineer. That city had an alternative plan, and one of the purposes of receiving evidence with reference to suggested plans was to determine whether or not such plan was feasible to abate the nuisance. There was evidence that the plant proposed to be built by the city of Los Angeles would alleviate conditions which brought about this litigation. There can be no question that the court was justified in giving mandatory directions to the city of Los Angeles to execute the plan which the city had already adopted and submitted to the court. The provisions of the judgment as to the city of Los Angeles have become final. Appellants were given an opportunity by the judgment to erect their own plants or to otherwise provide for their sewage disposal. It would appear from the record that appellants have indicated that their only plan is to dispose of their sewage through the Los Angeles system. The chief engineer and general manager of the County Sanitation Districts posi-

tively and unequivocally stated that as far as such districts which had been sewering through Hyperion were concerned, it would be to their best interests to join with the city of Los Angeles in the new plant and that the same situation was applicable to the cities of Vernon and Culver City. The latter municipality has filed an application with the State Board of Public Health to be permitted to do so.

The city of Los Angeles is bound to construct the system which it proposed, which the court approved, and which the judgment has made binding upon that city. To that extent, at least, the final judgment against the city of Los Angeles is final also as to the appellants.

Appellants are permitted to adopt some other method of disposing of their sewage, subject only to the statutory requirement that such method be approved by the State Board of Public Health. They are required to pay a proportionate share toward the Los Angeles system only in the event that they desire to take part in the use of such system. The testimony taken with reference to the different types of treatment plants that could be built was justified by the position taken by the city of Los Angeles at the trial that it desired to abate the nuisance and was already engaged in planning for the construction of a new sewage treatment plant to accomplish that purpose. None of the appellants was prejudiced by such testimony or the findings thereon.

In the type of case now before us, the trial court is sitting as a court of equity, and as such is clothed with broad powers to accomplish the ends of justice in the proceeding. The findings and conclusions of law herein, supported as they are by substantial evidence, indicate that there is a strong possibility of working out some solution at reasonable cost that may be of benefit to all parties concerned. The state has a very definite interest in preserving and protecting public health, and in seeing that the same is not endangered. While not requiring appellants to avail themselves of the Los Angeles municipal system, the court attempted, in the event any of the appellants desired to take part in the construction of the high-rate activated sludge plant at Hyperion, to work out a fair and just solution of the proportionate costs to be paid by each appellant according to the capacity allotted to it as determined upon by its own engineer. Such a course met with judicial approval in the

case of *Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501, 558, 561 [81 P.2d 533].

Appellants' contention that the court ordered the construction of a sewage treatment plant larger than necessary to abate the nuisance is answered by the fact that defendant city of Los Angeles has agreed to take all the capacity not otherwise allotted.

That appellant municipalities and sanitation districts, as they assert, were "without exception, according to testimony of their engineers and officers, utterly unable to finance the construction of sewage disposal facilities and sewage treatment works necessary for the disposal of their sewage by means independent of the sewage and treatment plant facilities of the City of Los Angeles," furnishes no ground for a reversal of the judgment herein. That a nuisance existed was admitted. The court was clothed with jurisdiction to order its abatement, and a primary obligation rests upon each appellant to dispose of its sewage in such a manner as not to injure others. The court solved its problem by ordering the abatement of the nuisance, and went further, in answer to appellants' contention that they were financially unable to provide independent facilities to dispose of their sewage, by offering them the use of the Los Angeles city project, requiring only that they pay their proportionate share, based on the use they might make thereof.

It is true, as urged by appellants, that the State Board of Public Health is vested with exclusive jurisdiction to approve or disapprove plans for facilities used in connection with the disposal of sewage. ██ As suggested by respondent, this court may take judicial notice that the State Board of Public Health has approved and has issued a permit to the city of Los Angeles authorizing the construction of the new proposed plant.

██ Appellants' contention that the judgment rendered herein violates the provisions of article I, section 13, of the Constitution of California, and the Fifth and Fourteenth Amendments to the Constitution of the United States, in that its effect is to deprive appellants of their property without due process of law, cannot be sustained. Appellants predicate this argument on the premise that the court was without jurisdiction or right to disregard their several contracts with the city of Los Angeles; that in so doing and requiring

appellants to contribute funds toward the construction of the new treatment plant and submarine tube in excess of the amounts which they are severally obligated to pay to the city of Los Angeles under their respective contracts, appellants' property will, to the extent of such excess payments, be taken without due process of law.

The judgment required that each appellant should pay a proportionate share of the cost of the new system according to the capacity allotted to each appellant, but only in the event such appellant desired voluntarily to sewer through Hyperion.

This is a proceeding initiated by the people of the State of California on behalf of the state itself, and on behalf of the State Department of Public Health, as well as other state agencies, against all named defendants, to abate a public nuisance. Therefore, the court rightfully refrained from passing upon any of the rights, obligations or liabilities affecting the various defendants by reason of their contractual relations with each other, and left those matters open for future adjudication in a proper proceeding. Although the aforesaid contracts concerned the disposal of sewage, the court would not be justified in this action to adjudicate the rights existing between the various appellants by reason of their contracts one with the other. Insofar as the judgment herein is concerned, if any of the appellants have any rights against the city of Los Angeles, or vice versa, by reason of any existing contract, such rights have been preserved and may be enforced in a proper action. All of appellants' property and rights were preserved to them and the judgment in the instant action does not impair or violate any of their constitutional rights.

Other points urged for a reversal are noted, but we deem them untenable and therefore requiring no special discussion.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied March 10, 1948. Doran, J., voted for a rehearing.

Appellants' petition for a hearing by the Supreme Court was denied April 7, 1948. Shenk, J., voted for a hearing.