[L. A. No. 21826. In Bank. Mar. 3, 1952.]

CITY OF CULVER CITY et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

E. L. Searle for Petitioners.

Fred N. Howser and Edmund G. Brown, Attorneys General, and Bayard Rhone, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioners, Culver City and the members of its city council, seek review and annulment of a judgment that they are guilty of contempt for failure to perform acts required by the injunction in *People* v. *City of Los Angeles* (1948), 83 Cal.App.2d 627 [189 P.2d 489]. The relevant portions of the injunction and the factual situation which led to its issuance are described in the opinion in *City of*

*Vernon* v. *Superior Court, ante,* p. 509 [241 P.2d 243]. We have concluded that the contempt judgment should be affirmed.

The contempt proceeding was commenced by the filing of an affidavit which contained the following allegations: Petitioners have personal knowledge of the terms of the judgment and the requirements imposed by it on Culver City. The judgment became final on November 12, 1948, after affirmance on petitioners' appeal and denial of their petition for certiorari. Culver City intends to dispose of its sewage through the new plant built by Los Angeles. Since 1945 Los Angeles has attempted "to work out an arrangement" with Culver City by which the latter could pay its proportionate share of the cost of the new plant, but Culver City has refused to do so. On February 14, 1949, the city council authorized institution of an action against Los Angeles to obtain judicial interpretation of agreements with Los Angeles, made in 1922 and 1925, which concern disposition of sewage. On April 11, 1950, the city council submitted to the electors of Culver City a proposed bond issue of $1,250,000 to pay for sewage facilities, and the issue was approved by more than two thirds of the electors. Petitioners have done nothing more to comply with the injunction, although they have the ability to comply.

The reason for Culver City's failure to obtain money for its share of the cost of the new plant by selling its bonds appears from an answering affidavit of petitioners and from the testimony at the contempt hearing. The city cannot sell the bonds, it is asserted, because it cannot obtain the opinion of a bond attorney that they are marketable. The bonds "must be, in the opinion of counsel [the bond attorney], valid and binding obligations of the issuing city before a marketable opinion can be issued." The bond attorney will not give a marketable opinion because he is not certain that there is a legal obligation of Culver City to Los Angeles which would be a basis for issuance and sale of the bonds.

It appears from the evidence that the bond attorney would give a marketable opinion (1) if Culver City would enter into a contract to pay Los Angeles its share of the cost of the new plant pursuant to sections 55110 and 55112 of the Government Code, which provide for "an agreement with other local agencies for the joint construction, ownership, or use of sewage treatment plants" and for a bond issue to pay the cost of such construction, or (2) if, in the declaratory

relief action of Culver City against Los Angeles which was authorized by the city council and which is now pending, it is determined that Culver City owes Los Angeles a sum certain on account of sewage disposal. Culver City urges that it has done and is doing, in good faith, everything it can to bring about a situation in which the bond attorney would give a marketable opinion.

The evidence as to why Culver City and Los Angeles have not entered into a contract pursuant to sections 55110 and 55112 of the Government Code is conflicting. There is testimony of individual petitioners that representatives of Los Angeles refused to enter into a new contract unless petitioners abandoned their claims under the 1922 and 1925 contracts.[1] This testimony was not directly denied, but a representative of Los Angeles testified that he told the council of Culver City that "we were not arguing or deciding the merits of the old contracts; Culver City certainly had the right to determine that in court whenever they saw fit to do so." This latter statement is obviously in accord with the rights of the parties as adjudicated in the injunction decree.

In its declaratory relief action against Los Angeles, Culver City takes the position that its 1922 and 1925 contracts with Los Angeles obligate Los Angeles to dispose of all sewage of Culver City for fixed sums which have already been paid, and that Culver City cannot be required to pay Los Angeles further sums to aid in defraying the cost of a new sewage plant. Argument that the pendency of the declaratory relief action in any way shows a bona fide attempt to comply with the injunction decree is but a reiteration in a different form of the contention made by Vernon in relation to its contracts with Los Angeles. As in the Vernon case it is to be remembered that the basic suit (see p. 648 of 83 Cal.App.2d) "is a proceeding initiated by the . . . State of California . . . to abate a public nuisance. Therefore, the court rightfully refrained from passing upon any of the rights, obligations or liabilities affecting the various defendants by reason of their contractual relations with each

---

[1]Los Angeles had no right to impose such a condition. As the District Court of Appeal stated in its opinion on appeal from the injunction decree, "Insofar as the judgment herein is concerned, if any of the appellants [including Culver City] have any rights against the city of Los Angeles, or vice versa, by reason of any existing contract, such rights have been preserved and may be enforced in a proper action." (*People v. City of Los Angeles* (1948), *supra*, 83 Cal.App.2d 627, 648.)

other." The statement in the opinion of the District Court of Appeal that "Insofar as the judgment herein is concerned, if any of the appellants [including Culver City] have any rights against the city of Los Angeles, or vice versa, by reason of any existing contract, such rights have been preserved and may be enforced in a proper action," does not mean that Culver City, or any other of the injunction defendants, may escape complying with the terms of the judgment by instituting further litigation. On the contrary, as declared in Vernon (*ante*, p. 519 [241 P.2d 243]), this ruling preserves to petitioners all contractual rights they may possess under the mentioned contracts but likewise it requires them to settle or litigate those rights independently of compliance with the injunction decree. Culver City's continued reliance on its 1922 and 1925 contracts with Los Angeles is, in effect, a refusal to abandon contentions which were made and decided against it in the injunction suit. As in Vernon (*ante*, p. 519 [241 P.2d 243]), the judgment in the basic suit and the decision of the District Court of Appeal conclusively establish that the bringing of actions upon the old contracts is not compliance with the injunction and that such litigaton remains open for determination on its merits, unaffected by the injunction decree. (*Norris* v. *San Mateo County Title Co.* (1951), 37 Cal.2d 269, 272 [231 P.2d 493].)

To negate Culver City's claim that it has done everything it can do to raise money to pay for its share of the cost of the new plant, respondent also relies upon evidence that other cities were able to make arrangements with Los Angeles whereby they issued marketable bonds and upon the admitted failure of Culver City to attempt to raise funds by tax or assessment. All that can be said in favor of petitioners in respect to the evidence of their asserted good faith attempts to comply with the injunction is that there is a substantial conflict. Since the conflict is substantial and has been resolved against petitioners by the trial court, the judgment cannot on that ground be annulled.

Petitioners also present arguments as to the uncertainty of the injunction and the charge of contempt which are answered in the opinion in *City of Vernon* v. *Superior Court*, *ante*, pp. 513-515 [241 P.2d 243]. They make another contention which arises out of the same uncertainty as that which, it is claimed, inheres in the injunction. It is urged that the commitments (quoted *infra*) of certain citees are void because they do not comply with section 1219 of the

Code of Civil Procedure. That section provides, "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he have performed it, and in that case *the act must be specified in the warrant of commitment.*" Italics added.) The act must be specified with particularity. (*In re Wells* (1946), 29 Cal.2d 200, 202 [173 P.2d 811]; *In re Vallindras* (1950), 35 Cal.2d 594, 596 [220 P.2d 1].)

Certain individual citees here are committed "until they and all of them have completed all arrangements necessary for the financing of the proportionate share of the city of Culver City of said new treatment plant or works, according to the gallonage allotted to the city of Culver City, and so that said share will be available as required; that they take such action (1) by the appropriation of the necessary funds as stated in said judgment or the levying of a tax, charge, assessment, imposing fees, tolls, rentals or other charges for the raising of the necessary funds, or (2) by any other system, method, plan or device, or combination thereof, or (3) the doing of such things as might be necessary for the sale of said bonds and the sale of said bonds to provide the means by which said municipal corporation could or might raise, accumulate or collect the moneys necessary for the payment of said city's proportionate share of the cost of construction of the new treatment plant and submarine outfall at Hyperion, so that its share might be available as required." It is urged that the foregoing is too vague a description of the act which the citees must do to purge themselves of contempt. Insofar as the specification permits alternative methods of compliance, it is to the benefit, rather than the detriment, of the petitioners. Nor is the omission to specify the precise sums to be paid and the dates on which they are to be paid a fatal defect. As in the Vernon case, there is a precise formula for computing the share of the cost, based upon gallonage allotted to the city (a figure which the petitioner city itself can specify) and the total capacity of the plant (a known figure), and the cost of the plant and the times when the funds are required can be determined by consultation with Los Angeles, which has proceeded with the construction of the plant despite the failure of some of the other parties to the injunction suit to comply with the injunction. As also pointed out in the Vernon opinion, the trial court in the basic injunction decree expressly reserved jurisdic-

tion to supervise and settle any disputes which might arise in respect to fixing petitioners' share of the costs.

██ Petitioners argue at some length concerning the distinction between civil and criminal contempt. From the beginning of this proceeding petitioners have urged that they should be advised whether the proceeding was for criminal contempt, civil contempt, or both, and that the proceeding is fatally defective because the two types of contempt were "scrambled." They say, vaguely, that they have been deprived of constitutional rights because they were not informed whether the contempt proceeding had as its object the punishment of petitioners or the enforcement of the injunction, but they suggest no respect in which the failure to so inform them affected them adversely or at all. The distinction between civil and criminal contempt is important in the federal and some state courts because there are procedural differences, particularly in the safeguards afforded the citee, and also, perhaps, differences in the nature of the intent which must be shown. (See, e.g., *Gompers* v. *Buck's Stove & R. Co.* (1911), 221 U.S. 418, 441, 444 et seq. [31 S.Ct. 492, 55 L.Ed 797] ; *Garrigan* v. *United States* (1908), 163 F. 16, 19, 22 [89 C.C.A. 494, 23 L.R.A.N.S. 1295], cert. denied, 214 U.S. 514 [29 S.Ct. 696, 53 L.Ed. 1063] ; *Bigelow* v. *RKO Radio Pictures* (1948), 78 F.Supp. 250, 254; *State* v. *Fletcher Tr. Co.* (1937), 211 Ind. 27, 32, 34 [5 N.E.2d 538] ; *Root* v. *MacDonald* (1926), 260 Mass. 344, 364 [157 N.E. 684, 54 A.L.R. 1422] ; see, also, Joseph Moskovitz, *Contempt of Injunctions* (1943), 43 Columb.L.Rev. 780; Comment (1950), 48 Mich. L.Rev. 860.) But in California the proceedings leading to punishment for failure to obey a decree (criminal contempt) and to imprisonment until the omitted act is performed (civil contempt) are exactly the same. (Code Civ. Proc., §§ 1209-1219; see *In re Morris* (1924), 194 Cal. 63, 67 [227 P. 914].)

██ Although the sections which provide the procedure for both kinds of contempt are in Part III of the Code of Civil Procedure, which is entitled "Special Proceedings of a Civil Nature," contempt proceedings are said to be "criminal in nature" and those procedural rights and safeguards which are appropriate to criminal contempt proceedings are also afforded, in Californa, in civil contempt proceedings. (See 5 Cal.Jur., Contempt, § 37.) Therefore, as in *Chas. Cushman Co.* v. *Mackesy* (1938), 135 Me. 490, 494 [200 A. 505, 118 A.L.R. 148], "the distinction is not of importance, for the procedure in both cases, in so far as equity decrees are con-

cerned, is governed by the statutory provisions above mentioned.''

Arguments as to the undue severity of punishment of the individual petitioners are answered in *City of Vernon* v. *Superior Court, ante,* p. 520 [241 P.2d 243].

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Traynor, J., Spence, J., and McComb, J. pro tem., concurred.

EDMONDS, J.—For the reasons stated in my concurring and dissenting opinion in *City of Vernon* v. *Superior Court, ante,* p. 520 [241 P.2d 243], I concur in the conclusion that the petitioners were guilty of contempt because they did not comply with the injunction within the time specified.

However, the belated ''arrangements'' made by the petitioners to comply with the injunction are even more thorough than the action taken by the city of Vernon. Culver City has attempted, unsuccessfully, to sell bonds to meet its share of the cost of the new plant. Counsel for Culver City will not give an opinion as to marketability until its liability is determined in a pending declaratory relief action which it has brought against the city of Los Angeles. In the alternative, such an opinion probably could be secured if Culver City would contract with Los Angeles for payment of its share of the cost of the Hyperion plant. But the terms of such contract also are dependent upon the existing contractual rights of the parties. Thus, Culver City has reached an impasse in its efforts to comply with the injunction.

For these reasons, in my opinion, Culver City has made all ''arrangements'' necessary to meet its obligations without abandoning its rights under existing contracts which are specifically preserved by the judgment in the abatement proceeding.

I would, therefore, modify the judgment by striking therefrom the order of continuing imprisonment for petitioners Thomas J. Carroll, Curtis J. Davis and J. Ray Klots.

CARTER, J.—I dissent for the same reasons as are set forth in my dissenting opinion in *City of Vernon* v. *Superior Court, ante,* p. 522 [241 P.2d 243], this day filed.

The opinion was modified to read as above printed and petitioners' application for a rehearing was denied April 2, 1952. Carter, J., was of the opinion that the application should be granted.