[Civ. No. 24438.   Second Dist., Div. One.   Aug. 4, 1960.]

LONGRIDGE ESTATES (a Partnership) et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 24439.   Second Dist., Div. One.   Aug. 4, 1960.]

LAUREL HILLS CORPORATION (a Corporation), Appellant, v. CITY OF LOS ANGELES et al., Respondents.

David L. Sefman and Montgomery G. Rice for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Weldon L. Weber, Deputy City Attorney, for Respondents.

SCOTT (Robert H.), J. pro tem.*—Plaintiff Longridge is the subdivider of certain property within the city of Los Angeles. It submitted to the city a tentative tract map for Tract 22078 which was approved. It later submitted a revised tentative map which was approved. On March 25, 1957, it requested a one-year extension in which to complete the tract and to record the final map thereof. On April 4, 1957, the city planning commission recommended approval of the extension subject to certain conditions, one being that an outlet sewer charge, as provided by Municipal Code, section 64.11.2,[1]

---

*Assigned by Chairman of Judicial Council.

[1] "Section 64.11.2 [Added by Ordinance No. 107840.]

"OUTLET SEWER CHARGE .

" (a) and (b) [Amended by Ordinance No. 110,308.]

" (a) Whenever real property tributary to the City Sewerage System that can be served by existing sewers or by the construction of an off-site sewer not longer than one mile to an available, financed or otherwise assured outlet sewer, is included within the borders of a new tract map, sewers, if not existing, shall be constructed within or adjacent to the

be paid by plaintiff prior to recordation of the final map. This was at the rate of $400 per acre under existing circumstances. On May 7, 1957, the city council granted the extension subject to conditions imposed. On September 17, 1957, plaintiff paid an outlet sewer charge of $9,944 under protest, and the tract map was approved and recorded. The

tracts to serve each lot, and as a condition of the approval of the tentative map of each tract and prior to recording of each such tract map, a fee which shall be determined by the Board of Public Works based on $400 per acre in said tract, hereafter referred to as the Outlet Sewer Charge, shall be paid by the owner thereof to the City for deposit in the Private Sewer Construction Account of the Board of Public Works Trust Fund, unless the Board of Public Works, upon recommendation of the City Engineer, determines that it would be contrary to the public welfare and interest to assume the responsibility of providing the necessary offsite or outlet sewers as required by Subsection (f) hereof.

"(b) In determining the Outlet Sewer Charge, the Board shall:

"1. Reduce the Outlet Sewer Charge when the owner demonstrates that the property has paid special assessments for an interceptor sewer to which it may connect directly or indirectly, by the amount of said special assessment.

"2. Reduce the charge by all or part of the amount paid as a contributing property to the construction of an off-site sewer to serve the property prior to the requirement by the City that such charge shall be paid.

"3. Eliminate from the area to be charged $400 per acre, any property within the new tract:

"(i) Which is exempt from the Connection Charge for outlet facilities under Section 64.16.1;

"(ii) For which a permit was issued prior to September 13, 1956, to connect to a Bonded Sewer.

"(c) The Board may permit a subdivider to install off-site sewers in lieu of all or part of the Outlet Sewer Charge based on the actual cost of said off-site sewer. Should the actual cost of such off-site sewer be less than the Outlet Sewer Charge required by subsection (a) hereof, the difference between such actual cost and said Outlet Sewer Charge shall be paid by the subdivider to the City for deposit in the Private Sewer Construction Account of the Board of Public Works Trust Fund.

"(d) [Amended by Ordinance No. 110,308.] The Council may authorize the subdivider or other property owner by contract with the City, to construct off-site sewers costing in excess of the outlet sewer charge required by subsection (a) hereof and subsequent to the construction and acceptance of said off-site sewer to reimburse said subdivider or property owner the difference between the actual cost of said off-site sewer and the outlet sewer charge.

"If the outlet sewer charge has been paid by the subdivider or property owner prior to entering into the contract with the City to construct an off-site sewer or prior to submission by the owner of evidence justifying reduction of the charge for any property in accordance with this section, the Council may authorize the refund of all or part of the outlet sewer charge previously paid.

"(e) Actual cost of off-site sewers as used in subsections (c) and (d), shall be determined from sealed bids, received and opened by the Board of Public Works, after publicly advertising therefor, plus engineering and incidental costs not to exceed ten per cent of the accepted bid price for the performance of the work.

"(f) In those cases where an Outlet Sewer Charge is paid, the City

money was paid into the legally designated fund. (Municipal Code, § 64.19.1.)[2] On February 19, 1958, plaintiff Longridge applied to the city for a refund which was denied by the city council.

Plaintiff Laurel is the subdivider of certain property within the city of Los Angeles. On May 13, 1955, it sought to subdivide a parcel described as Tract 19532. One part or unit of this tract was recorded under that same number: 19532, on September 20, 1956. A few days prior thereto, about September 4, 1956, plaintiff requested the city council for a one-year extension in which to complete the remaining units of that tract. About September 20, 1956, the city planning commission recommended and on October 4, 1956, the city council approved the recommendation granting the extension and requiring that any specified outlet sewer charge be paid. In June, 1956, plaintiff submitted a revised tentative map showing a part of Tract 19532 which was designated Unit

assumes the responsibility of providing the necessary off-site or outlet sewers when sewage disposal facilities are available and when connection to the City Sewerage System is deemed to be necessary by the City.

"(g) Whenever good planning and engineering practice requires that sanitary sewers of greater size or depth than those required for the servicing of the property immediately concerned be constructed within or adjacent to the subdivision, the additional cost of providing sewers within or adjacent to the subdivision in accordance with the City's requirements of larger size or greater depth than that required by the property immediately concerned shall be considered the same as or in addition to the cost of constructing an off-site sewer as provided in subsections (c) and (d) hereof.

"(h) Subdivisions other than those included in subsection (a) hereof.

"1. may be approved without the construction of sewers or the payment of the Outlet Sewer Charge where the Health Officer determines that ample area is available for private sewage disposal, where soil, ground water and other factors are favorable. The connection charge for outlet-facilities shall be applicable to lots and parcels in these subdivisions when connections to future sewers are requested or required.

"2. may be permitted or required to construct sewers within the tract and pay the Outlet Sewer Charge upon the determination by the Council, upon advice of the Board, that existing development or trends justify the City assuming the responsibility of providing the connecting sewers."

[2]"Section 64.19.1 [Added by Ordinance No. 107,840]

"SEWER CONSTRUCTION ACCOUNT .

"(a) Notwithstanding any other provisions of this Code all moneys collected pursuant to Sections 64.11.2, 64.15, 64.16.1 and 64.18, referred to in subsection (d) of Section 64.18, shall be deposited in the Private Sewer Construction Account in the Board of Public Works Trust Fund.

"(b) The Board is hereby authorized to use moneys available in the Private Sewer Construction Account in the Board of Public Works Trust Fund for financing the construction of outlet sewers for which the City is obligated by accepting charges in accordance with Section 64.11.2.

"(c) The Board shall submit a report to the Council of the status of the Private Sewer Construction Account in the Public Works Trust Fund as of October 31, February 28 and June 30 of each year."

Tract 23186. The remaining unit was called Tract 23927. On September 10, 1957, plaintiff paid outlet sewer charge of $5,528 on Tract 23186, and on September 13, 1957, paid the charge of $564 on Tract 23927, each under protest, and each sum was paid into the legally designated fund. The final map as to each tract was approved, and both were recorded on September 19, 1957.

On March 3, 1958, plaintiff Laurel claimed a refund which, on April 14, 1958, was refused by defendant.

Each plaintiff brought suit to recover the money thus paid, and to enjoin defendant from enforcing sections 64.11.2 and 64.16.1[3] of Los Angeles Municipal Code Ordinance 77000. The cases were tried together and are presented together on appeal, asserting that the essential inquiry is as to the right of defendant, under section 64.11.2, to compel payment of the outlet sewer charge.

We note that defendant interposed a separate defense asserting that plaintiffs had not exhausted their administrative remedy under the law by appealing to the city council for a review of their protest before resorting to the trial court. The court agreed that this was so, but thereupon proceeded to hear and dispose of the case on its merits. No party to either action now claims that it could have expected a disposition of the essential case more advantageous than that arrived at by the trial court if the plaintiffs had sought such

---

[3]"Section 64.16.1 [Added by Ordinance No. 107,840.]

"CONNECTION CHARGE FOR OUTLET FACILITIES

"(a) Before granting a permit to connect any lot or parcel not already connected to a public sewer or house connection sewer pursuant to the provisions of Sec. 64.12, except applications filed by a department of this City, the Board shall require, in addition to all other charges and fees imposed by Sec. 64.12 to Sec. 64.22, inclusive, the payment by the applicant therefor of a fee for a connection charge for outlet facilities of an amount equal to $400 per acre of the property to be served, unless:

"1. The property had previously paid an outlet or off-site sewer charge either in money or by the construction of said outlet or off-site sewers; or

[Amended by Ordinance No. 110,308.]

"2. The property is serviced by a sewer constructed under an Assessment Act proceeding, the ordinance of intention for which was adopted prior to September 19, 1957.

"3. The property participated in the cost of the sewer constructed by permit for which the construction permit had been issued prior to the effective date of this section.

"(b) The Council may, in the exercise of its sound discretion, and upon the advice of the Board, reduce the connection charge for outlet facilities of property which constructs off-site public sewers beyond the limits of said property, by all or part of the actual cost of the construction of said off-site public sewer."

a hearing by the city council. A discussion of the matter is unnecessary in the light of the record which includes judgments which make no mention of this alleged duty of plaintiffs to exhaust their administrative remedy and, in the said judgments, impose no added burdens because plaintiffs had addressed themselves directly to the court.

We further note that the judgments undertook to pass on the validity of section 64.16.1 of the code. This section provides for payment by property owners of a sewer charge where the payment required under section 64.11.2 has not been made and the connection is made at a later date. Under the facts in these cases now before us, the payments have been made (under protest) and defendant has expressed no intention to proceed under section 64.16.1 against these plaintiffs. The latter have disclosed no evidence that defendant has such an intention, or that there is any basis upon which they could expect a claim to be made under the later section. The portion of the judgments declaring section 64.16.1 to be a valid and legal enactment must be regarded as surplusage. It was an attempted determination on an issue that was not properly before the court.

In resisting the charges imposed by defendant in these cases, and paid by plaintiffs, the latter ask us to consider the ''Subdivision Map Act'' (Bus. & Prof. Code, §§ 11500-11628). No specific section is pointed out, but plaintiffs declare that defendant had no right to require that payment of the outlet sewer charge be made before the final subdivision map was recorded. This demand by defendant did not relate to the contents of the subdivision map in the sense of requiring that plaintiffs put something into the map or remove something from it, but related rather to fixing the time when they were to do something required by Municipal Code section 64.11.2. No cogent argument is advanced in opposition to this time being fixed for payment of the charges made if the section was a portion of a municipal ordinance which was a proper exercise of discretion by the legislative body of the city. This action by the city was not inconsistent with any provision of the Subdivision Map Act.

Plaintiffs are under the impression that the case of *Kelber* v. *City of Upland*, 155 Cal.App.2d 631 [318 P.2d 561], precludes the enforcement by defendant of the outlet sewer charge. In that case a city of the sixth class enacted two amendments to that city's subdivision map ordinance: one requiring a new subdivision to pay $30 per lot, to be de-

posited in a fund to be used for park and school sites in the city; the second provided that, in lieu of the construction of drainage structures outside the subdivision, the subdivider shall pay $99.07 per acre into a "Subdivision Drainage Fund." The payments were made and by the court were ordered refunded. Its ruling was upheld on the theory that the requirement that these payments be made was, in effect, a fund-raising method which was not a proper course for the city in that case to follow and was not a proper part of the subdivision procedure, as it related to the subdivision under consideration. Plaintiffs refer to no other California case in support of their contention, and the cited case affords no adequate support to their position in the case now before us.

Defendant in this case is a charter city with power over municipal affairs, pursuant to article XI, section 6, of the Constitution of the State of California. (*Cramer* v. *City of San Diego,* 164 Cal.App.2d 168 [330 P.2d 235].)

Construction, maintenance, and repair of sewers and storm drains may be provided by ordinance and sustained as a valid exercise of police power in the interest of public health and as an incident to constructing and maintaining streets. (Cal. Const., art. XI, § 11.) (*Harter* v. *Barkley,* 158 Cal. 742 [112 P. 556]; *City of National City* v. *Fritz,* 33 Cal.2d 635, 637 [204 P.2d 7]. See also *Southern Calif. Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713 [329 P.2d 289].)

The Subdivision Map Act does not preclude, but does clearly approve local ordinances relating to matters covered by that Act. (*Mefford* v. *City of Tulare,* 102 Cal.App.2d 919 [228 P.2d 847]; *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503].)

There is a presumption of validity and constitutionality of the city's ordinances, and every intendment will be indulged in their favor, except where it appears (and it does not in this case) that they transcend the city's power, or deny to a citizen a right accorded by the constitution, or laws enacted pursuant thereto. (*In re Zhizhuzza,* 147 Cal. 328 [81 P. 955]; *Ojai* v. *Chaffee,* 60 Cal.App.2d 54 [140 P.2d 116].)

The power to make a reasonable charge for the connection to and use of the sewers was a proper incident to the exercise of police power by defendant to provide them. (*Harter* v. *Barkley, supra,* 158 Cal. 742.) There was evidence that sewage from the Longridge subdivision traverses the city sewage system for about 14 miles and from Laurel Hills about

10 miles until it reaches the point of disposal at Hyperion, and that the facilities thus used cost about $106,000,000. Plaintiffs point out that others had already paid for or had assumed the burden of paying for much of this system before the ordinances were passed which are now before us. This in no way suggests that new subdivisions should not be required to pay their fair share of the cost of expansion, repair, and replacement made necessary, in part, by their share in the use of this vitally essential service.

Plaintiffs say that some subdivisions do not have to pay this outlet sewer charge and that this is discriminatory. We find that this charge is not required or accepted if the city finds that it would be contrary to public welfare and interest to assume the responsibility of providing sewers and the outlet sewers are not constructed and the subdivision does not connect with the sewer system. Or "Where the Health Officer determines that ample area is available for private sewage disposal, where soil, ground waters and other factors are favorable" the subdivision may proceed without paying the outlet sewer charge and without benefit of sharing in the sewer system. Neither plaintiff comes within either of these two exceptions. These provisions in no way invalidate the charge made against plaintiff's subdivisions for the connection with and service by the sewer system. (*Cramer* v. *City of San Diego, supra,* 164 Cal.App.2d 168.)

The money collected from plaintiffs was placed, together with other like payments, into a special trust fund of the city for use exclusively for the construction of outlet sewers. (Municipal Code, § 64.19.1.) This was obviously a legal and businesslike procedure directed in part to assist the city in the discharge of the duty required by law to provide for the disposal of sewage arising within the city. (*People* v. *City of Los Angeles,* 83 Cal.App.2d 627 [189 P.2d 489].) This was a public purpose and neither plaintiff can avoid its proper share of responsibility, even though the benefit to that plaintiff from the dollars which it pays into this fund cannot be specifically pointed out. (*City of Glendale* v. *Trondsen,* 48 Cal.2d 93 [308 P.2d 1].)

In the judgment in each case there is a paragraph numbered 1, declaring the validity of the disputed sections. As to section 64.11.2, it is a correct conclusion of law, but is not properly a part of the judgment. As to section 64.16.1, as above noted, it is mere surplusage.

In each case the judgment is modified by striking out the

entire paragraph numbered 1 and the number 2 appearing at the beginning of the remaining paragraph. As thus modified, the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Petitions for a rehearing were denied August 25, 1960.